HARRIS, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–558–CR.  Submitted on briefs January 6, 1977.—
Decided February 1, 1977.*
(Also reported in 250 N. W. 2d 7.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Robert J. Paul,* deputy state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *William L. Gansner,* assistant attorney general.

CONNOR T. HANSEN, J. The issue presented for review is whether the trial court abused its discretion in sentencing the defendant to nine years and eleven months imprisonment for soliciting a female under the age of eighteen to practice prostitution?

At the trial, S. DS., a fourteen year old girl and a high school freshman, testified that on October 4, 1974, she ran away from her home in Hartford, Wisconsin, and proceeded to Milwaukee, Wisconsin. She had run away from home for short periods of time on two previous occasions.

S. DS. testified that she spent most of the day in a McDonald's restaurant on Wisconsin avenue. About 4 p.m., a young man known only as "Slim" approached her and asked her if she was a runaway and needed a place to stay. She responded in the affirmative. S. DS. stated that Slim left the restaurant and came back with the defendant. Slim explained to her ". . . that they [Slim and the defendant] were going to teach me a trade and that they'd take care of me." The nature of the trade she was to learn was to ". . . sell my body." The specific plan was that ". . . they were going to get me a room

and that they'd send sailors up there and I'd have to charge them $15 for what they wanted." The services she was to provide were to include sexual intercourse and other sexual acts. In return for her work, S. DS. was to be provided with lodging, food and clothing. She was to turn all money over to Slim.

S. DS. testified that the three proceeded to the YMCA on Wisconsin avenue where Slim obtained a room, which the defendant paid for. The three, after a short excursion down Wisconsin avenue, returned to the room and stayed there that night. S. DS. stated that during the evening Slim further told her of the things she "would have to go through," including various sexual acts; that the defendant asked her "to be his woman" and told her to make money only for him and not Slim; that Slim went over the instructions again; and that the defendant repeated the instructions one more time and told her "[t]hat I'd have to charge $15, and he told me that I should try and steal the rest of the sailor's money if I could." S. DS. also stated that the defendant told her that she should wear more makeup and different clothing which he would provide.

S. DS. testified that late the following morning, the defendant gave her different clothing and the trio proceeded to Wisconsin avenue. She stated that she saw the defendant conversing with various sailors, and later in the Wisconsin Hotel Bar, heard the defendant ask two sailors if they wanted to go up to a room with her and pay for it. She testified that she saw the defendant receive money from one of them.

S. DS. testified that as she was leaving with the two sailors she was apprehended by Officer La Pointe of the Milwaukee police department. She initially gave Officer La Pointe a false name and age indicating that she was Sherry Nowakowski, age nineteen. S. DS. never did, in

fact, perform any sexual acts for money and never did, in fact, receive any money.

La Pointe testified that he went outside with S. DS., established her true identity, approached the defendant, and after informing him that an investigation was being conducted, asked him if he knew that S. DS. was a runaway? La Pointe stated that the defendant admitted knowledge that S. DS. was a runaway. La Pointe testified that the defendant later again admitted that he knew that S. DS. was a runaway.

The defendant testified in his own behalf and essentially his testimony consisted of a denial of the testimony of S. DS. and Officer La Pointe.

The sentencing hearing was held the morning after the defendant was convicted. At the hearing, and preceding the imposition of sentence, the trial court heard the arguments of the prosecution recommending incarceration, and the arguments of defense counsel recommending probation. The trial court had before it for consideration the bail evaluation and a copy of the defendant's criminal record. (Neither of these two documents appear in the record.) No presentence investigation was compiled or submitted. None was required. *Weatherall v. State,* 73 Wis.2d 22, 242 N.W.2d 220 (1976) ; *Sprang v. State,* 63 Wis.2d 679, 218 N.W.2d 304 (1974) ; *Langston v. State,* 61 Wis.2d 288, 212 N.W.2d 113 (1973). The defendant declined to exercise his right of allocution.

The full content of the trial court's comments immediately prior to imposing sentence is set forth below:

"THE COURT: Well, I note the prior record. I note that the offenses are misdemeanors. We're not dealing with misdemeanors here, however. We're dealing with one of the most despicable types of activity that may be found within the pages of the Wisconsin statutes between Chapters 939 and 975, particularly when it is borne in mind that the young lady involved here was fourteen

years of age, just barely more than a freshman in high school, a country girl coming to the city and suddenly becomes fair prey for the two-legged animals that practice activity of this kind.

"This is in my view—can be compared with murder. The sale of heroin has often been referred to in the past decades as death on the installment plan. This is a type of death involved here, too. It is a killing of the ego. It is a killing of the spirit, and it has often, all too tragically, effects on the flesh as well. What it is is peddling flesh, and this defendant undertook to take a fourteen year old, as the jury has found—and I believe the jury's verdict is absolutely accurate on the evidence—and to have a brief period of acquaintanceship, introduce her into the arts of courtesanship for gain. In other situations he would be called a pimp, which is derived from the French word—a French word—and even with the often referred to loose morality found in such cities as Paris, a pimp is looked upon with derision.

"We're not dealing here with the current discussion of sexual conduct between consenting adults; we are dealing here with the taking of a fourteen year old child and injecting her into the most despicable and degrading of business transactions.

"Under all of the circumstances, I am satisfied beyond any degree of a doubt that the welfare of this community requires that he be immersed quickly into the most highly structured of societies so that he may learn what conduct will be considered appropriate in our society and what will not. Certainly the welfare of the community requires that speedy action of this type be taken so that the word may go out without any hesitation—and loud and clear—that people like Mr. Harris engage in activity of this kind in this city at their peril and the peril should be demonstrated to be real, actual, and drastic."

This court has repeatedly set forth the standards of appellate review under which it will address an allegation of abuse of discretion in sentencing. Most recently in *Taylor v. State*, 74 Wis.2d 255, 246 N.W.2d 516 (1976), this court stated at p. 267:

". . . In reviewing a sentence for an abuse of discretion, this court adheres to a strong policy against interference with the trial court's discretion in passing sentence. It is presumed that the trial court acted reasonably and the defendant must show some unreasonable or unjustifiable basis in the record for the sentence. *State v. Killory* (1976), 73 Wis.2d 400, 408, 243 N.W.2d 475. This court will only modify a sentence when an abuse of discretion clearly appears. *McCleary v. State* (1971), 49 Wis.2d 263, 278, 182 N.W.2d 512. . . ."

The same or similar language has been expressed by this court in several cases.[1]

In *State v. Johnson, supra,* 44, this court noted that an abuse of discretion might be found under the following circumstances:

". . . (1) Failure to state on the record the relevant and material factors which influenced the court's decision; (2) reliance upon factors which are totally irrelevant or immaterial to the type of decision to be made; and (3) too much weight given to one factor in the face of other contravening considerations. . . ."

In *Ocanas, supra,* 185, this court stated:

". . . An abuse of this discretion will be found only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances. . . ."

---

[1] *See: State v. Johnson,* 74 Wis.2d 26, 44, 245 N.W.2d 687 (1976); *Rosado v. State,* 70 Wis.2d 280, 289, 234 N.W.2d 69 (1975); *Ocanas v. State,* 70 Wis.2d 179, 183, 184, 233 N.W.2d 457 (1975); *Brozovich v. State,* 69 Wis.2d 653, 655, 230 N.W.2d 639 (1975); *State v. Jackson,* 69 Wis.2d 266, 275, 230 N.W.2d 832 (1975); *Jones v. State,* 66 Wis.2d 105, 117, 223 N.W.2d 889 (1974); *Gaddis v. State,* 63 Wis.2d 120, 129, 216 N.W.2d 527 (1974); *Voigt v. State,* 61 Wis.2d 17, 23, 211 N.W.2d 455 (1973); *Jung v. State,* 32 Wis.2d 541, 548, 145 N.W.2d 684 (1966); and *State v. Tuttle,* 21 Wis.2d 147, 150, 124 N.W.2d 9 (1963).

In *Gaddis, supra,* 129, 130, this court further stated:

". . . This court will modify a sentence only where there has been a clear abuse of discretion, and an abuse of discretion will be found only where there is no rational basis for the sentence imposed, or where the rationale for the sentence imposed is not either articulated in or inferable from the record. . . ."

We find the record in this case to be completely void of any evidence that would support a determination by this court that the trial court abused its discretion in imposing sentence. On the contrary, our examination of the record leads us to the conclusion that the trial court fully articulated its reasons for imposing sentence, considered proper factors, and exercised proper judicial discretion.

*McCleary v. State,* 49 Wis.2d 263, 274–276, 182 N.W.2d 512 (1971), set forth the factors which the trial court should consider in imposing sentence: Gravity of the offense; the character of the offender; and the need for public protection.

Those factors were by no means exclusive. It is within the trial court's discretion to consider on sentencing many other factors. This court's decision in *State v. Tew,* 54 Wis.2d 361, 367, 368, 195 N.W.2d 615 (1972), set forth the following additional and related factors: (1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentence and cooperativeness; (10) defendant's need for close rehabilitative control;

(11) the rights of the public; and (12) the length of pretrial detention. The weight to be attached to each above factor is a determination particularly within the wide discretion of the trial court. *Ocanas, supra*, 185.

In the instant case, the trial court's view of the gravity of the offense is apparent in its description of and condemnation of the activities of solicitation of prostitutes. Moreover, it is clear that the trial court placed considerable emphasis on the factor that the offense here involved a fourteen year old girl. The trial court considered the involvement of a fourteen year old girl aggravating in a moral sense, at the very least.

The trial court considered the character of the defendant. It observed that the prior criminal record consisted only of misdemeanors, but it is nonetheless evident that the trial court viewed the nature of the defendant's offense here as controlling evidence of his character. The trial court further expressed its view that the rehabilitative needs of the defendant could best be served by imprisonment.

The trial court also considered the need for public protection, noting that both the welfare of the community and the general deterrent effect of a ". . . real, actual, and drastic" sentence influenced its decision. All are proper factors for consideration. *Jones, supra,* 118; *Byrd v. State,* 65 Wis.2d 415, 423, 222 N.W.2d 696 (1974) ; *Bastian v. State,* 54 Wis.2d 240, 245, 194 N.W.2d 687 (1972) ; *Moore v. State,* 55 Wis.2d 1, 9, 197 N.W.2d 820 (1972).

When the record, as here, reveals that the trial court considered proper factors in reaching its sentencing decision, there is nothing improper in the trial court expressing its contempt, revulsion or outrage at the defendant's conduct. It is obvious the trial court considered and based its sentencing decision on the proper factors of the gravity of the offense, the character of the defendant, and the need for public protection.

The defendant's reliance upon *Rosado, supra,* is misplaced. This court modified the sentence in Rosado because there the trial court based its exercise of sentencing discretion on a clearly improper factor, the alleged offenses in Puerto Rico. *Rosado, supra,* 291.

The defendant contends that an independent review of the facts and circumstances surrounding the offense does not justify the sentence. We do not subscribe to such a contention.

The sentence on its face is not so excessive and unusual or disproportionate to the offense committed so as to shock public sentiment and violate the judgment of reasonable people. *Ocanas, supra,* 185. The sentence was within the limits of the statutory maximum. While that alone does not validate it, the record reflects that the trial court properly exercised its discretion in arriving at the sentence.

This court has frequently held that a substantial sentence may be imposed to emphasize the seriousness of the crime. *State v. Jackson, supra,* 276; *Bastian, supra,* 246. The trial court, even in light of all the contravening factors pointed out by the defendant, determined that the seriousness of the crime involving a fourteen year old girl outweighed those factors. There is a rational basis for the discretion exercised by the trial judge in the imposition of sentence.

The defendant argues finally that the interests of the public do not support the imposition of the near maximum sentence. The trial court articulated a consideration of the interests of the public and determined that those interests dictated a lengthy period of confinement. The record also reveals the trial court's concern with the deterrent effect of the sentence on both the defendant and others who would engage in such activities. The fact that the defendant disagrees with the trial court and believes that the interests of the public and the

rehabilitation of the defendant could best be served by a shorter period of incarceration is not a basis for finding of abuse of discretion on the part of the trial court. We conclude that the trial court did not abuse its discretion in the imposition of sentence.

On this review, no issues are raised relating to the judgment of conviction. However, we have examined the record and conclude that further proceedings by way of review of the judgment of conviction would be wholly frivolous and without arguable merit. Therefore, the judgment of conviction is affirmed.

A second writ of error issued to review what the defendant denominated an order denying a motion for new trial. The trial court correctly considered this to be a motion for a reduction or modification of sentence and denied the motion. We affirm the order denying the motion.

*By the Court.*—Judgment and order affirmed.