In re the Estate of Edward A. Schunk, Jr.:
Donna Lemmer, Aimee Schunk Gudis, Jayne
Schunk, John Schunk and Virgil Schunk,
Appellants,†

v.

Linda Schunk, Megan Schunk and
Charles Wilkinson,
Respondents.

Court of Appeals

*No. 2007AP2680. Submitted on briefs September 8, 2008.
—Decided September 25, 2008.*

**2008 WI App 157**

(Also reported in 760 N.W.2d 446.)

† Petition to review denied.

On behalf of the appellants, the cause was submitted on the briefs of *Matthew E. Yde* of *Strasser & Yde, S.C.*, Wausau.

On behalf of the respondent, *Linda Schunk*, the cause was submitted on the brief of *Stephanie L. Finn* and *Terry L. Moore* of *Herrick & Hart, S.C.*, Eau Claire.

Before Higginbotham, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J.   The issue on appeal in this probate action is the proper construction of WIS. STAT. § 854.14 (2003–04),[1] which prevents a person who "unlawful[ly] and intentional[ly] kill[s]" another from benefiting under the decedent's will and other instruments. We agree with the circuit court that "unlawful and intentional killing" within the meaning of this statute does not include assisting another to commit suicide. We therefore affirm.

---

[1] The references to WIS. STAT. § 854.14 are to the 2003–04 version for the reasons stated in note 2. All other references to the Wisconsin Statutes are to the 2005–06 version.

## BACKGROUND

¶ 2. Edward Schunk died from a self-inflicted shotgun wound. At the time of his death he was terminally ill with non-Hodgkin's lymphoma. He lived with his wife, Linda, and their daughter, Megan. Edward had six older children who are not Linda's children. Edward left a will that is the subject of dispute in another action, but for purposes of this action the important point is that Linda and Megan, along with others, are beneficiaries under Edward's will.

¶ 3. This action began with a petition for informal administration of Edward's estate. One of Edward's older daughters filed a demand for formal proceedings on the issue of whether Linda and Megan had unlawfully and intentionally killed Edward and were thus barred from inheriting under his will pursuant to WIS. STAT. § 854.14. Her position and that of four of her siblings, who joined with her in the proceeding (the objectors), is that Linda and Megan assisted Edward in committing suicide.

¶ 4. Linda and Megan filed a motion for summary judgment on this issue. They denied that they assisted Edward in committing suicide but contended that, even if that were true, WIS. STAT. § 854.14 does not bar them from inheriting under Edward's will. The objectors opposed the motion because in their view the statute applies to assisted suicide, and they contended they were entitled to a trial to establish that Linda and Megan did assist in Edward's suicide.

¶ 5. The factual submissions show that Edward was hospitalized several days before his death. According to the medical records, on the day of his death his doctor allowed him to leave on a one-day pass to see his home and his dogs "one more time." Linda and Megan brought him home. There are factual disputes over Edward's mental and physical condition on that day and what

occurred after he arrived home. Viewed most favorably to the objectors, the evidence shows that Linda and Megan knew that Edward wanted to commit suicide and brought him home so that he could do so. They drove him to a cabin on their property, helped him inside, gave him a loaded shotgun, and left. Viewed most favorably to Linda and Megan, the evidence shows that Edward drove himself to the cabin, taking his gun and hunting bag, and they did not know that he intended to commit suicide. It is undisputed that Edward's son and grandson found him later that day in the cabin, dead from a single gunshot wound to the chest.

¶ 6. The circuit court concluded that, assuming the objectors' view of the evidence was correct for purposes of the motion, Linda's and Megan's conduct in assisting Edward in committing suicide did not come within the statutory language of "unlawful and intentional killing." WIS. STAT. § 854.14. The court therefore granted summary judgment in favor of Linda and Megan.

## DISCUSSION

¶ 7. On appeal the objectors contend the circuit court erred in its construction of WIS. STAT. § 854.14 and therefore erred in granting summary judgment.

■■

¶ 8. When we review summary judgment we employ the same methodology as the circuit court and our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). A party is entitled to summary judgment if there are no genuine issues of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). In assessing the factual submissions, we view them most favorably to the opposing party and draw all reasonable inferences in favor of that party. *Burbank Grease Servs.*

*v. Sokolowski*, 2006 WI 103, ¶ 40, 294 Wis. 2d 274, 717 N.W.2d 781.

¶ 9. The parties here agree that, for purposes of our review, we, like the circuit court, are to accept the view of the evidence advanced by the objectors—that Linda and Megan assisted Edward in committing suicide. The issue is whether, given these facts, Wis. STAT. § 854.14 bars Linda and Megan from inheriting under Edward's will.

■

¶ 10. When we construe a statute we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We may use a dictionary to establish the common meaning of a word. *Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995). We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Kalal*, 271 Wis. 2d 633, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, we conclude the statutory language has a plain meaning, then we apply the statute according to that plain meaning. *Id.*, ¶ 46.

¶ 11. WISCONSIN STAT. § 854.14 (2003–04) provides in relevant part:[2]

---

[2] WISCONSIN STAT. § 854.14 (2003–04) was in effect on the date Edward died, January 16, 2006. The current version of the

(2) Revocation of benefits. Except as provided in sub. (6), the unlawful and intentional killing of the decedent does all of the following:

(a) Revokes a provision in a governing instrument that, by reason of the decedent's death, does any of the following:

1. Transfers or appoints property to the killer.

. . . .

(3) Effect of revocation. Except as provided in sub. (6), provisions of a governing instrument that are revoked by this section are given effect as if the killer disclaimed all revoked provisions . . . .

. . . .

(6) Exceptions. This section does not apply if any of the following applies:

(a) The court finds that, under the factual situation created by the killing, the decedent's wishes would best be carried out by means of another disposition of the property.

(b) The decedent provided in his or her will, by specific reference to this section, that this section does not apply.

¶ 12.  The key phrase for purposes of this appeal is "unlawful and intentional killing of the decedent." WIS. STAT. § 854.14(2). The objectors contend that this plainly includes assisting the decedent to commit suicide. We disagree and conclude the phrase plainly does not include this conduct.

statute became effective April 11, 2006 by 2005 Wis. Act 216, §§ 139–43. The portions of the statute cited above are the same in the current version.

489

¶ 13.    In the dictionary the objectors refer us to, the first definition of the verb "kill" is "to deprive of life." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 661 (1989).[3] "To commit suicide" is defined as "to put (oneself) to death: kill." *Id.* at 1180. A person who assists another in voluntarily and intentionally taking his or her own life is plainly not depriving the other of life. As the assumed facts in this case illustrate, providing Edward with a loaded shotgun did not deprive him of his life:   he deprived himself of life by shooting himself with the shotgun. "Killing" is not commonly used to describe assisting another to commit suicide, just as "killer" is not commonly used to describe the person who assists another to kill himself or herself.

¶ 14.    The objectors argue that because Linda and Megan provided the means with which Edward killed himself, they were the agents of his death and thus "killers" within the meaning of the statute. We do not

---

[3] The objectors use the definition for the noun "kill":   "an act or instance of killing." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 661 (1989). We do not use this because it does not shed light on the meaning of the act "to kill." The objectors also quote the italicized portion of the list of synonyms for "kill" and the distinctions among them:

> *Syn* KILL, SLAY, MURDER, ASSASSINATE, DISPATCH, EXECUTE mean to deprive of life. *KILL merely states the fact of death caused by an agency in any manner;* SLAY is a chiefly literary term implying deliberateness and violence but not necessarily motive; MURDER specif. implies stealth and motive and premeditation and therefore full moral responsibility; ASSASSINATE applies to deliberate killing openly or secretly often for political motives; DISPATCH stresses quickness and directness in putting to death; EXECUTE stresses putting to death as a legal penalty.

*Id.* (emphasis added). The point this italicized portion makes, read in context, is that, unlike the synonyms, the verb "kill" does not connote a particular manner of "depriv[ing] of life."

agree that "killer" is commonly understood to mean the person who provides the means that enable another to kill himself or herself.

¶ 15. The objectors point out that WIS. STAT. § 940.12 makes it a felony to "with intent that another take his or her own life assist[] such person to commit suicide . . . ." Thus, they assert, Linda and Megan acted unlawfully and the facts show they intended to help Edward commit suicide. However, "unlawful" and "intentional" modify "killing" by limiting its meaning. If, as we have concluded, assisting another to commit suicide is not "killing" another, it does not become so because the conduct is unlawful and intentional.

¶ 16. The objectors also argue that the exception in WIS. STAT. § 854.14(6)(b) shows that the legislature intended "unlawful and intentional killing" to include assisting another to commit suicide. This paragraph provides that § 854.14 does not apply if "[t]he decedent provided in his or her will, by specific reference to this section, that this section does not apply." According to the objectors, the only reasonable meaning of this exception is that it refers to assisted suicide, because the legislature could not logically have intended to permit a testator to expressly allow another to inherit under the will if that person committed "intentional homicide."[4]

■

¶ 17. We conclude WIS. STAT. § 854.14(6)(b) does not alter the plain meaning of "unlawful and intentional

_____

[4] The objectors cite to 2 JAMES B. MACDONALD, WISCONSIN PROBATE LAW AND PRACTICE, § 15:9 n.17 (8th ed. Supp. 2007), which states the "most likely use of a waiver would be in a situation of assisted suicide." This brief footnote does not provide any guidance in construing the statute according to the principles of statutory construction. We therefore do not consider it in our analysis.

killing." This paragraph plainly expresses the legislature's intent to allow a testator to dispose of his or her property as the testator wishes notwithstanding the fact that an intended beneficiary has unlawfully and intentionally deprived the testator of his or her life. It may be unlikely a testator would choose to do so, but we cannot say it is illogical or absurd to think a testator would ever do so. A testator might, for example, contemplate that an intended beneficiary might kill the testator in an act of euthanasia—"the act . . . of killing . . . hopelessly sick . . . individuals . . . for reasons of mercy," WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 429 (1989); and the testator might want this to happen. There may be other circumstances that would reasonably come within the exception in para. (6)(b), but we need not define its parameters to resolve this appeal. The point here is simply that there are ways to reasonably construe the exception that are consistent with the common meaning of the verb "kill."[5]

## CONCLUSION

¶ 18. We conclude the circuit court properly construed "unlawful and intentional killing" in WIS. STAT. § 854.14 not to include assisting another to commit suicide. We therefore affirm.

*By the Court.*—Judgment affirmed.

---

[5] Because we resolve this appeal based on the plain meaning of the statute, we do not discuss the cases from other jurisdictions cited by the parties.