# In the GENERAL COURT-MARTIAL CASE OF SERGEANT FIRST CLASS Jesse T. RIEMER, Wisconsin Army National Guard, Recruiting and Retention Battalion, Madison, Wisconsin: STATE of Wisconsin, Respondent,

v.

## Jesse T. RIEMER, Appellant.

Court of Appeals

*No. 2016AP398. Oral argument April 24, 2017.
—Decided June 15, 2017.*

2017 WI App 48

On behalf of the appellant, the cause was submitted on the briefs and oral argument of *Cpt. Declan J. Binninger, JA*, Springfield, Illinois.

On behalf of the respondent, the cause was submitted on the brief of *Gregory M. Weber*, assistant attorney general, and *Brad D. Schimel*, attorney general. There was oral argument by *Gregory M. Weber*.

Before Kloppenburg, P.J., Lundsten and Blanchard, JJ.

¶ 1. KLOPPENBURG, P.J. At a general court-martial under the Wisconsin Code of Military Justice, Wɪs. Sᴛᴀᴛ. ch. 322 (2015–2016), Sergeant First Class Jesse Riemer of the Wisconsin Army National Guard was convicted, pursuant to negotiated pleas made before a military judge, of various felony offenses involving Riemer's use of "his position as a [military] recruiter to engage in wrongful conduct with recruits and enlisted members of the [Wisconsin Army Na-

tional Guard].''[1] Riemer was sentenced to thirty days' confinement and a bad-conduct discharge. The adjutant general approved the conviction and sentence. Riemer appealed to this court pursuant to WIS. STAT. § 322.0675. That statute provides that convictions by a general court-martial are appealed "to the Wisconsin court of appeals, District IV and, if necessary, to the Wisconsin Supreme Court."

¶ 2. Riemer challenges the sentence imposed by the military judge, arguing that the military judge erred in four respects: (1) the judge misused his discretion by imposing an unduly harsh and unreasonable sentence; (2) the judge's statements during sentencing evidenced objective bias in violation of Riemer's right to due process; (3) the judge violated Riemer's right to due process by failing to fully consider all of the evidence presented to him at sentencing; and (4) the judge violated Riemer's right to due process by assuming facts not supported by evidence available to the judge at sentencing.

¶ 3. Riemer argues that we should review his first issue—sentencing discretion—as would a military appellate court. That is, Riemer asserts that we should accord no deference to the sentencing judge and, rather, independently determine whether the sentence was appropriate. We reject that argument and apply the same deferential review we normally apply to sentencing. As to the remaining three issues, Riemer nominally asserts that we should review them as would a military appellate court, but Riemer does not suggest that such review differs from how we would

---

[1] The offenses of which Riemer was convicted are summarized below in ¶ 33.

All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

normally review these due process issues. Indeed, Riemer directs us to Wisconsin due process case law on all three issues. If Wisconsin law differs from military law, or federal law generally, on these topics, the parties have not brought those differences to our attention. Accordingly, we follow the parties' lead and apply Wisconsin due process law to the last three issues. If there is an argument that our review of any of these three issues should be based on federal law, we leave that question for another day.

¶ 4. Applying our normal deferential standard of review, we conclude that the judge did not misuse his discretion. Looking to Wisconsin due process law, in keeping with the parties' arguments, we reject Riemer's remaining three due process arguments. Therefore, we affirm.

## BACKGROUND

¶ 5. At the times relevant to this action, Riemer was a recruiter for the Wisconsin Army National Guard and was subject to the Wisconsin Code of Military Justice set forth in chapter 322 of the Wisconsin Statutes. WIS. STAT. § 322.002(1). Riemer was charged with thirteen offenses based on statements given by a number of recently enlisted female soldiers.

¶ 6. A military hearing officer conducted a preliminary hearing on the charges under WIS. STAT. § 322.032. At the hearing, the female soldiers testified in detail about Riemer's behavior and its effect on them. Riemer's counsel cross-examined the soldiers. After the hearing, the charges were referred for trial by general court-martial before a military judge under WIS. STAT. §§ 322.033–.035. Prior to trial, the parties reached a plea agreement, and the military judge

received Riemer's pleas and imposed sentence at a plea and sentencing hearing under Wis. Stat. § 322.039.

¶ 7. At the plea hearing, for each offense to which Riemer pleaded guilty, the military judge asked Riemer to tell the military judge why Riemer was guilty of the offense and "what happened." After hearing Riemer's responses, the military judge accepted Riemer's pleas and proceeded to sentencing. At sentencing, the government presented exhibits comprising Riemer's military personnel record, and Riemer presented exhibits comprising letters of support and records of and articles about his awards and achievements from both military and non-military contexts. Riemer also presented three witnesses: a fellow officer, Riemer's wife, and Riemer himself.

¶ 8. After deliberation, the military judge imposed a sentence of thirty days' confinement and a bad-conduct discharge. Under Wis. Stat. § 322.060, Riemer sought review of the sentence by the convening authority (the adjutant general), who approved the sentence. Riemer appeals the sentence.

## DISCUSSION

¶ 9. In order to provide the legal context for Riemer's state court appeal of his military court-martial sentence, we begin with a brief overview of the military justice system that applies to members of the Wisconsin Army National Guard.[2] We then address the

[2] For an informative historical review of the military justice system that applies to members of the National Guard, *see* Major Robert L. Martin, *Military Justice in the National Guard: A Survey of the Laws and Procedures of the States, Territories, and the District of Columbia,* Army Law., Dec. 2007, at 30.

question of whether federal military law or Wisconsin state law governs the first issue, sentencing discretion. We conclude that we should apply Wisconsin's standards of appellate review to that issue and, under those standards, we affirm. Finally, we address the last three issues, applying law found in Wisconsin cases addressing the particular due process issues, and affirm as to those issues. We do not address whether we should look to federal due process case law as would a federal military appellate court.

## I. Wisconsin Army National Guard Military Justice System

¶ 10. The federal Uniform Code of Military Justice applies to members of the armed services while serving on active duty. UCMJ art. 2(a)(1) (2017) (codified at 10 U.S.C. §§ 801–946 (2015)); Manual for Courts-Martial, United States, R.C.M. 202(a) Discussion (5) and R.C.M. 204 (2016). Under the Uniform Code of Military Justice, court-martial appeals are typically appealed to the federal military appellate courts. 10 U.S.C. §§ 866, 867. However, members of the National Guard of the individual states who are not serving in federal active duty status are under the control of the states, and are therefore subject to the military justice systems of the states. *See* 32 U.S.C. §§ 326–327.

¶ 11. Federal law authorizes the states to enact military justice codes that provide for court-martial jurisdiction for their National Guard members. 32 U.S.C. § 326. In 2008, Wisconsin enacted the Wisconsin Code of Military Justice, which provides for court-martial jurisdiction for Wisconsin National Guard members. Wis. Stat. §§ 322.002, 322.016–.0767. The Wisconsin Code of Military Justice directs that appeals

from military court-martial decisions involving Wisconsin National Guard members are made to the state court of appeals, District IV, and the state supreme court following the appellate procedures provided under Wis. Stat. ch. 809. Wis. Stat. § 322.0675.

## II. Sentencing Discretion

¶ 12. This appears to be the first appeal to this court under the Wisconsin Code of Military Justice, and therefore we have no precedent in determining whether federal military law or Wisconsin state law governs the sentencing discretion issue in this case. That determination turns on the interpretation of a statute, which is a question of law that we address de novo. *Juneau Cty. v. Associated Bank, N.A.*, 2013 WI App 29, ¶ 15, 346 Wis. 2d 264, 828 N.W.2d 262.

¶ 13. The purpose of statutory interpretation is to discern the intent of the legislature. *Id.*, ¶ 16. When we interpret a statute, we begin with the statute's plain language, because we assume that the legislature's intent is expressed in the words it used. *Id.*; *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Kalal*, 271 Wis. 2d 633, ¶ 45. We interpret statutory language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and in a reasonable manner, to avoid absurd or unreasonable results. *Id.*, ¶ 46.

¶ 14. Two statutory provisions govern this appeal. As referenced above, Wis. Stat. § 322.0675 provides that convictions by a general court-martial are appealed "to the Wisconsin court of appeals, District IV and, if necessary, to the Wisconsin Supreme Court." Wisconsin Stat. § 322.143 provides that the Wisconsin Code of Military Justice, Wis. Stat. ch. 322, "shall be so construed as to effectuate its general purpose to make it uniform, *so far as practical,* with 10 USC ch. 47 [the federal Uniform Code of Military Justice]." (Emphasis added.) Thus, when we engage in appellate review under § 322.0675, we are to conduct appellate review as would a military appellate court, following the federal Uniform Code of Military Justice and the federal military law interpreting that code, so far as it is "practical" to do so.

¶ 15. Wisconsin Stat. ch. 322 does not contain a definition of the term "practical." The relevant dictionary definitions of "practical" include: "[o]f, relating to, governed by, or acquired through practice or action, rather than theory, speculation, or ideals"; "[c]apable of being used or put into effect; useful"; "[l]evel-headed, efficient, and unspeculative." The American Heritage College Dictionary 1073 (3d ed. 1993). *See Lemmer v. Schunk,* 2008 WI App 157, ¶ 10, 314 Wis. 2d 483, 760 N.W.2d 446 ("We may use a dictionary to establish the common meaning of a word."). The question, then, is whether federal military law governing the review of sentences is capable of being put into effect by Wisconsin appellate courts in a useful and unspeculative manner, governed by or acquired through practice or action. As we explain, we conclude that the answer is no.

201

¶ 16. Under federal military law, a military appellate court reviews a court-martial decision under Article 66(c) of the Uniform Code of Military Justice, which provides that:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority [here, the adjutant general]. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

10 U.S.C. § 866(c).

¶ 17. Article 66(c) has been interpreted to require "that the members of [the Courts of Criminal Appeals] *independently determine,* in every case within [their] limited Article 66, [Uniform Code of Military Justice], jurisdiction, the sentence *appropriateness* of each case [they] affirm." *U.S. v. Baier*, 60 M.J. 382, 384–85 (C.A.A.F. 2005) (quoted source omitted) (emphasis added).

¶ 18. At oral argument, Riemer acknowledged that military appellate courts are made up of officers who have been military judges, who have extensive experience in imposing sentences, and who rely on that experience to "independently determine" whether the judge in a particular court-martial proceeding imposed an "appropriate" sentence. *See U.S. v. Ballard*, 20 M.J. 282, 286 (C.M.A. 1985) ("the experienced and professional military lawyers who find themselves appointed as trial judges and judges on the courts of military review have a solid feel for the range of punishments

typically meted out in courts-martial . . . . [W]e have every confidence that this accumulated knowledge is an explicit or implicit factor in virtually every case in which a military judge imposes sentence or a court of military review assesses for sentence appropriateness.").

¶ 19. However, excepting individual Wisconsin judges who might happen to have a military background and familiarity with the military justice system, Wisconsin's appellate judges lack the military judges' experience and "accumulated knowledge" necessary to inform such an independent review of sentencing decisions. *See id.* In the words of the dictionary definition stated above, Wisconsin's appellate judges have not "acquired," and cannot be "governed by," the "practice or action" relevant to the assessment of a military court-martial sentence's appropriateness because, generally, the judges lack any such "practice or action." And absent that "practice or action," Wisconsin appellate judges are unable to conduct the sort of independent review required by federal military law in a useful and unspeculative manner. It follows that it is not practical for Wisconsin appellate judges to attempt to apply federal military law to the review of sentencing discretion.

¶ 20. We note that we could not obtain the equivalent of first-hand experience by reviewing military case law. That is, it would be plainly impractical for Wisconsin appellate judges to search military case law for dispositions in similar cases given the fact-specific nature of such cases and the inherent limitations on setting forth facts in written decisions. For that matter, just because a particular sentence is reversed or affirmed, does not mean that a different

203

military appellate court would not have reached a different result. As we understand the law, military appellate courts effectively employ sentencing discretion in the same way a military sentencing judge does in the first instance, meaning that there is a range of permissible outcomes. Notably, Riemer does not provide us with a review of case law addressing dispositions in similar cases in an attempt to demonstrate a pattern of less harsh treatment in similar situations.

¶ 21. Nor does Riemer engage on the question of how the appellate judges of this District would acquire the necessary knowledge to apply independent review of military sentencing. Instead, Riemer focuses his attention on how hard and expensive it would be for military attorneys to learn Wisconsin criminal law for purposes of handling cases of this type, including the appeals. That is, Riemer expresses concern that it would be difficult and costly for the military to have to train Wisconsin National Guard judge advocates regarding Wisconsin appellate law on those points on which state law differs from the federal military law that they learn alongside their active-duty counterparts.

¶ 22. First, we question whether this topic is germane to the interpretation of a statutory provision directing us to apply military law to the extent that it is practical for us to do so. That is, we do not see how Riemer's argument, that it may be hard and expensive for the military if Wisconsin appellate courts apply *state* law, is germane to the statutory inquiry into whether it is practical for the state appellate courts to apply *federal* military law.

¶ 23. Second, Riemer's argument is not convincing because there is nothing difficult about Wisconsin law as it pertains to the review of sentencing discre-

tion. Significantly, Riemer does not identify anything that military lawyers or judges would need to do differently based on whether review was deferential or independent. Thus, even if this concept about what may be hard or expensive for military lawyers is considered to be pertinent to our statutory analysis, we do not see how the deferential review that we apply to sentencing decisions would affect military lawyers' efforts to present their best cases on behalf of their clients, including at sentencing and in appeals. More to the point, any hardship in that regard does not address the pertinent question here, whether it is practical for Wisconsin appellate courts to engage in independent review, as would a military appellate court.

¶ 24. Riemer makes a number of additional, short, unpersuasive arguments. We briefly address and reject them for the sake of completeness.

¶ 25. Riemer points to the fact that this is the first appeal since the Wisconsin Code was enacted in 2008, and asserts that the scarcity of court-martial appeals means that it is practical for this court to "adopt" the independent review required by federal military law because such appeals will be so rare. Riemer's point is unclear. Why would the rarity of cases make the application of independent review more practical? It appears to us that low volume only exacerbates the lack of "practice or action" that we have already stated makes the application of federal military law impractical.

¶ 26. Focusing on the "make it uniform" language in WIS. STAT. § 322.143 rather than on the "so far as practical" language, Riemer argues in a conclusory fashion that we should apply the federal military law that applies to "similarly situated" National Guard service members in federal active duty status for the

205

sake of uniformity. However, this conclusory argument is contrary to the federal law that places the discipline of National Guard service members who are *not* in federal active duty status entirely within the jurisdiction of the states they serve, and the text of the state law that we are interpreting. Neither requires this level of uniformity. To the contrary, our state statute specifically permits differences when applying military law is not "practical." WIS. STAT. § 322.143.

¶ 27. Riemer makes a couple of arguments that bypass the interpretation of the text of WIS. STAT. § 322.143 altogether. Riemer argues that the body of federal case law concerning appellate review by military courts of court-martial sentences clearly seeks conformity with the federal military standard. This may be true, but it is beside the point. That federal military courts follow the federal military standard is not relevant to the question of whether it is practical for state appellate courts do the same. Similarly, his argument that applying federal military law will maintain "the character and integrity of the military justice process," is an abstract aspirational statement that Riemer fails to connect to the language of the state law provision at issue here.[3]

---

[3] Riemer also points to *Waterman v. State*, 654 So. 2d 150, 152 (Fla. Dist. Ct. App. 1995), in which the court, interpreting a Florida statute worded differently from our Wisconsin statute, held that the federal military standard of review applied to an appeal of an administrative decision by the Florida Department of Military Affairs. However, Riemer makes no developed argument based on this case, and, therefore, we decline to consider this case further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (the court of appeals may decline to consider arguments that are undeveloped).

¶ 28. In sum, Riemer fails to support his assertion that it is practical for Wisconsin appellate courts to follow federal military law in reviewing sentencing discretion, and we conclude that it is not practical for Wisconsin appellate courts to do so. Accordingly, we proceed to apply Wisconsin law to the particular issues he raises on appeal of his court-martial sentence.

¶ 29. Riemer argues that his sentencing judge misused his discretion by imposing an unduly harsh and unreasonable sentence. In the sections that follow, we state the Wisconsin law governing our review of a sentencing court's determination, provide a detailed review of the sentencing here, and explain why we reject Riemer's argument.

## A. Standard of Review

¶ 30. Sentencing falls within the discretion of the sentencing court. *McCleary v. State*, 49 Wis. 2d 263, 275, 182 N.W.2d 512 (1971); *State v. Gallion*, 2004 WI 42, ¶ 17, 270 Wis. 2d 535, 678 N.W.2d 197. "Discretion contemplates a process of reasoning based on the facts of record and reasonable inferences from those facts and a conclusion supported by a logical rationale founded upon proper legal standards." *State v. Klubertanz*, 2006 WI App 71, ¶ 16, 291 Wis. 2d 751, 713 N.W.2d 116 (citing *McCleary*, 49 Wis. 2d at 277).

¶ 31. The principal objectives of a sentence include protecting the community, punishing the defendant, rehabilitating the defendant, and deterring others from committing crimes. *Gallion*, 270 Wis. 2d 535, ¶ 40. In determining the sentencing objectives, the sentencing court must consider certain factors, includ-

207

ing the gravity of the offense, the character of the defendant, and the need to protect the public. *Harris v. State*, 75 Wis. 2d 513, 519, 250 N.W.2d 7 (1977) (citing *McCleary*, 49 Wis. 2d at 274–76). The weight assigned to each factor is left to the court's discretion. *Harris*, 75 Wis. 2d at 520.

¶ 32. A sentence is unduly harsh "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). We review claims for unduly harsh sentences under the erroneous exercise of discretion standard. *See State v. Stenzel*, 2004 WI App 181, ¶ 7, 276 Wis. 2d 224, 688 N.W.2d 20. "When the circuit court has exercised its discretion, we follow a consistent and strong policy against interference with the discretion of the [sentencing] court, and we afford 'a strong presumption of reasonability' to the court's sentencing determination because the [sentencing] court is best suited to consider the relevant factors and demeanor of the convicted defendant." *Klubertanz*, 291 Wis. 2d 751, ¶ 20 (citing *Gallion*, 270 Wis. 2d 535, ¶ 18).

## B. Riemer's Sentencing

¶ 33. Here, Riemer was initially charged with the following thirteen offenses in violation of three articles:[4]

---

[4] The offenses punishable by the Wisconsin Code of Military Justice are set forth as articles in Wis. Stat. ch. 322 subch. X. Riemer was charged with violating the following articles:

Article 92 (Wis. Stat. § 322.092):

- Making unwelcome sexual comments to a junior soldier, showing her indecent photos of another junior soldier, and requesting that she join a threesome;

- Requesting that a junior soldier be part of a threesome with him and another;

- Wrongfully requesting a junior soldier to be part of a threesome with him and another soldier, and engaging in an ongoing romantic and sexual relationship with her.

Article 93 (Wis. Stat. § 322.093):

- Making unwelcome sexual comments to a subordinate, showing her nude photos of another soldier, and requesting that she be involved in a threesome;

Article 92 . . . . Any person who does any of the following shall be punished as a court-martial may direct:

(1) Violates or fails to obey any lawful general order or regulation.

(2) Having knowledge of any other lawful order issued by a member of the state military forces, which it is his or her duty to obey, fails to obey the order.

(3) Is derelict in the performance of his or her duties.

Article 93 . . . . Any person who is guilty of cruelty toward, or oppression or maltreatment of, any person subject to his or her orders shall be punished as a court-martial may direct.

. . . .

Article 134 . . . . Though not specifically mentioned in this code, all disorders and neglects to the prejudice of good order and discipline in the state military forces and all conduct of a nature to bring discredit upon the state military forces shall be taken cognizance of by a court-martial and punished at the discretion of a military court.

Wis. Stat. §§ 322.092, 322.093, 322.134.

- Wrongfully and repeatedly requesting a subordinate to join a threesome with him and to join in a threesome with him and another soldier.

Article 134 (WIS. STAT. § 322.134):

- Making inappropriate remarks to a junior soldier about a tattoo on her buttocks;

- Engaging in an inappropriate relationship with a junior soldier by making unwelcome sexual comments to her and requesting that she be part of a threesome with him and another soldier;

- Engaging in an inappropriate relationship with a junior soldier by providing her alcohol, requesting that she be part of a threesome, taking nude photos of her masturbating, engaging in sexual intercourse with her, and recording sexual acts with her;

- Engaging in an inappropriate relationship with a junior soldier by consuming alcohol with her, requesting that she join a threesome, and engaging in a romantic and sexual relationship with her;

- Engaging in an inappropriate relationship with a junior soldier by wrongfully and repeatedly inviting her to join him for drinks;

- Engaging in an inappropriate relationship with a junior soldier by having her run on a treadmill in her bra and underwear at his request, touching her right breast, and having her masturbate him at his request;

- Engaging in an inappropriate relationship with a junior soldier by wrongfully requesting that she be part of a threesome;

- Wrongfully, as a married man, having sexual intercourse with a woman not his wife.

210

¶ 34. At the plea hearing, Riemer pleaded guilty to the following offenses, with the government dismissing the balance of the charges:

Article 92 (WIS. STAT. § 322.092):

- Violating a general regulation[5] by requesting that a junior soldier be part of a threesome with him and another soldier;

- Violating a general regulation by wrongfully requesting a junior soldier to be part of a threesome with him and another soldier, and engaging in an ongoing romantic and sexual relationship with her.

Article 93 (WIS. STAT. § 322.093):

- Engaging in maltreatment of a subordinate by wrongfully and repeatedly requesting a junior soldier to join in a threesome with him and in a threesome with him and another soldier.

Article 134 (WIS. STAT. § 322.134):

- Engaging in conduct to the prejudice of good order and discipline and of a nature to bring discredit upon the state military forces by making inappropriate remarks to a junior soldier about a tattoo on her buttocks;

- Engaging in conduct to the prejudice of good order and discipline and of a nature to bring discredit

---

[5] The regulation specified states that "relationships between soldiers of different rank are prohibited if they, one, compromise or appear to compromise the integrity of supervisory authority or the chain of command; two, cause actual or perceived partiality or unfairness; three, involve or appear to involve the improper use of rank or a position for personal gain; four, are or [are] perceived to be exploitive or coercive in nature; five, create an actual or certainly predictable adverse impact on discipline, authority, morale, or the ability of the command to accomplish its mission."

upon the state military forces by engaging in an inappropriate relationship with a junior soldier by making unwelcome sexual comments to her and requesting that she be part of a threesome with him and another soldier;

- Engaging in conduct to the prejudice of good order and discipline and of a nature to bring discredit upon the state military forces by wrongfully and repeatedly inviting an underage junior soldier to join him for drinks.

¶ 35. As stated above, the military judge imposed a sentence of thirty days' confinement and a bad-conduct discharge. His explanation for the sentence was admittedly brief:

The record, as evidenced by the many exhibits that I did review, is that you are a good soldier, above average even. However, your conduct outlined in these proceedings, which you've admitted to and accepted responsibility for, is a criminal military offense. The behavior is prejudicial to good order and discipline as well as discrediting to the Wisconsin National Guard and to the military.

Your duties as a recruiter puts you out to the public as the epitome of what it means to be a soldier, to serve, and to be a member of the Wisconsin National Guard, and you failed. You were given a responsibility that placed you in the classrooms of our youth and puts you in contact with young people that often were still seeking an identity and confidence in themselves, and you took advantage of that. By my count, there are at least six service members that you have adversely impacted by your actions, and they should have been protected against your actions, which were inappropriate and predatory in nature.

The military and the Wisconsin National Guard must do even more to prevent this from happening in the future.

After referring to the SHARP[6] training provided to service members, the judge stated, "your actions made clear that we must do a better job to get our ranks to hear the message and to take it to heart." The judge also stated that "[y]ou had a chance to apologize to those that you harmed, but you didn't."

### C. Appropriateness of Riemer's Sentence

¶ 36. The record demonstrates that the military judge gave an adequate explanation for the sentence he imposed. The judge highlighted the severity of the offenses, the need to protect other service members from similar misconduct, and Riemer's character as revealed by the absence of expressions of remorse and his having taken advantage of his position as a recruiter to prey upon young people.

¶ 37. Riemer argues that the military judge's explanation did not address deterrence or rehabilitation. While the judge may not have explicitly used these terms, his consideration of both factors is implicit in his remarks. The judge's acknowledgement of the need for deterrence, directed at Riemer, is reflected in his remarks that Riemer took advantage of his position as a recruiter to engage in inappropriate sexual behavior with young people and that the public needed to be protected from such conduct. The judge's

[6] SHARP stands for "Sexual Harassment/Assault Response and Prevention." https://www.army.mil/sharp (last visited on June 8, 2017).

acknowledgement of the need for deterrence, directed at his fellow service members, is reflected in his references to the need to send "the message" to other soldiers that this type of conduct would not be tolerated, so as to prevent similar misconduct. The judge's acknowledgement that Riemer would not likely be rehabilitated is reflected in his remarks relating to Riemer's misconduct with multiple victims despite his otherwise exemplary record and his having received the SHARP training, and to Riemer's failure to express sufficient remorse for his misconduct. The sentencing judge need not address all enumerated factors, but only those relevant to the particular case. *Gallion*, 270 Wis. 2d 535, ¶¶ 43 n.11, 46. The record shows that the military judge did so here.

¶ 38. Riemer also argues that sentencing him to thirty days' confinement and a bad-conduct discharge "for sending illicit text messages and unprofessional conduct" would shock the public sentiment.[7] Riemer's argument fails on many levels, several of which we now discuss. First, Riemer was not simply "an individual" but a soldier subject to a disciplinary regime that is critical to the effectiveness of the military

---

[7] Riemer's counsel also asserted at oral argument that the bad-conduct discharge "was overkill" because of the collateral consequences of such a discharge. However, he did not explain how those consequences should affect our analysis of whether the military judge misused his discretion in ordering a bad-conduct discharge as part of the sentence. Rather, counsel argued that the "overkill" indicated that the judge was biased against Riemer, or that the judge did not review the mitigating evidence presented by Riemer, or that the judge mischaracterized "the true nature" of Riemer's offenses in terms of victim impacts. We address each of these three particular arguments in the sections that follow.

establishment and its role as a protector of public safety, and which does not apply to civilians. Second, Riemer was a military recruiter, representing the face of the military to young recruits and often serving as their first contact with the military. Third, Riemer was a superior officer who engaged in misconduct with junior female soldiers. Fourth, Riemer's sentence was well within the maximum,[8] and there is a presumption that a sentence "well within the limits of the maximum sentence" is not unduly harsh. *State v. Grindemann*, 2002 WI App 106, ¶¶ 31–32, 255 Wis. 2d 632, 648 N.W.2d 507 (quoted source omitted). Fifth, to the extent that Riemer seems to be arguing that his conduct did not warrant being labeled as felonies, it is the Wisconsin legislature that decided that Riemer's court-martial convictions are felony offenses;[9] there-

---

[8] The prosecutor informed the military judge that Riemer faced a maximum punishment of five years and three months' confinement and a dishonorable discharge. In oral argument defense counsel suggested that Riemer faced a maximum period of six years' confinement. The difference does not matter to our analysis.

[9] *See* Wis. Stat. § 322.056(2) (providing that "[a] conviction by a general court-martial of any military offense for which an accused may receive a sentence of confinement for more than 1 year is a felony offense"); § 322.056(5) (providing that the governor shall prescribe the limits of punishment for violations); Wisconsin Manual for Courts-Martial Subchapter VII § 8–2 (Article 56) and Appendix B (incorporating the maximum punishments set forth in the federal Manual for Courts-Martial); and Manual for Courts-Martial Article 92 § 16.e., Article 93 § 17.e., Article 134 § 83.e. (setting the maximum punishments as: dishonorable discharge, forfeiture of all pay and allowances, and two years' confinement for a violation of Article 92; dishonorable discharge, forfeiture of all pay and allowances, and one year's confinement for a violation of Article 93; and dismissal, forfeiture of all pay and allowances, and two years' confinement for a violation of Article 134).

fore his contention that his offenses should not be felonies is properly directed at the legislature.

¶ 39. In sum, Riemer fails to persuade us that his sentence of thirty days' confinement and a bad-conduct discharge is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Id.,* ¶ 31 (quoted source omitted). We conclude that the sentence is not unduly harsh and unreasonable, and that the military judge properly exercised his sentencing discretion.

### III. Remaining Due Process Issues

¶ 40. As noted, we address Riemer's remaining issues applying Wisconsin law because that is the approach employed by the parties and Riemer does not argue, as to these particular issues, that our review would differ under military or federal law.

¶ 41. Riemer argues that the military judge violated his right to due process in three ways, all related to the sentencing. Constitutional due process claims raise questions of law and are reviewed de novo. *State v. Aufderhaar,* 2005 WI 108, ¶ 10, 283 Wis. 2d 336, 700 N.W.2d 4. We evaluate each of Riemer's three due process claims in turn.

---

When a dishonorable discharge is authorized, a bad-conduct discharge is also authorized. Rules of Court-Martial § 1003(c)(1)(A)(i). A bad-conduct discharge "is less severe than a dishonorable discharge and is designed as a punishment for bad-conduct rather than as a punishment for serious offenses of either a civilian or military nature." Rules of Court-Martial § 1003(b)(8)(C).

## A. Objective bias

¶ 42. Riemer argues that the military judge's statements during sentencing evidenced *objective* bias. When analyzing a claim of judicial bias, we "presume that the judge was fair, impartial, and capable of ignoring any biasing influences." *State v. Gudgeon*, 2006 WI App 143, ¶ 20, 295 Wis. 2d 189, 720 N.W.2d 114. However, this presumption is rebuttable by proof of objective or subjective bias. *Id.* Objective bias is demonstrated if a reasonable person could question the judge's impartiality based on his statements. *Id.*, ¶ 26.

¶ 43. Riemer argues that the military judge demonstrated objective bias by allegedly holding Riemer to a higher standard than other members of the Wisconsin National Guard. Riemer specifically points to the judge's references to Riemer's failure to live up to his responsibility as a recruiter. According to Riemer, these references to Riemer's status as a recruiter demonstrated "an intent to treat SFC Riemer differently than other soldiers, and therefore unfairly." At oral argument, counsel for Riemer acknowledged that Riemer's relationship to new young recruits, who were in a subordinate and vulnerable position relative to his rank and status as a recruiter, was "part of the nature" of his offenses, but Riemer faulted the judge for according too much weight to that relationship. However, as stated above, the weight to give the relevant facts and factors in imposing sentence is left to the judge's discretion. *Harris*, 75 Wis. 2d at 520.

¶ 44. The record shows that the judge appropriately considered the extra responsibility that comes

with presenting to the public "the epitome of what it means to be a soldier . . . in the classrooms of our youth and . . . in contact with young people," and the extra seriousness of abusing that responsibility. And, the record shows that the judge appropriately considered the vulnerable position of the recently enlisted subordinate soldiers who "should have been protected against [Riemer's] actions, which were inappropriate and predatory in nature." Such individualized consideration is relevant to all three of the primary sentencing factors in this particular case: the gravity of the offenses, the character of the defendant, and the need to protect the public, meaning both the population of potential recruits with whom he interacted at high schools and colleges and service members as a whole.

¶ 45. Separately, Riemer argues that the military judge demonstrated objective bias by commenting that Riemer's misconduct indicated that there is a need for more SHARP training. The judge indicated that many service members complain that such training takes time away from their "warrior tasks" and "is the worst part of serving." Riemer contends that these comments communicate that the judge shared the negative feeling about SHARP training and was, therefore, inclined to punish Riemer for subjecting the judge and fellow service members to more "unnecessary" SHARP training. Riemer reads into the judge's remarks sentiments that are not reasonably inferable from the judge's words.

¶ 46. First, Riemer strips away context. Reading the judge's remarks as a whole, it is clear that the judge was considering, first, how Riemer's serial misconduct, despite having received SHARP training, related to the sentencing factors of seriousness of the offense, Riemer's character, and the need to protect the

public; and, second, how Riemer's serial misconduct shows that more needed to be done to prevent it. Additionally, the judge may have meant to say that many or most soldiers find the training frustrating because they do not need to be taught how not to harass fellow soldiers, but that soldiers like Riemer show that all soldiers need to be subjected to more SHARP training in order to reach the soldiers who do need the training. In any event, Riemer fails to show any unfairness stemming from the military judge's reference to Riemer's misconduct as evidence of the possible need for more SHARP training.

¶ 47. In sum, Riemer's due process arguments based on objective bias have no merit.

## B. *Consideration of Documentary Evidence*

¶ 48. Riemer argues that the military judge failed to fully consider all of the evidence presented to him in making his sentencing decision. More specifically, Riemer contends that the record reveals that the judge had less than three hours to review the documentation that Riemer presented at sentencing, comprising 547 pages of his military personnel file, mitigating evidence related to his awards and accomplishments, and written support from others. Riemer points out that the judge made only passing mention of the documents and argues that the judge could not have evaluated every document in less than three hours. It follows, according to Riemer, that his sentence was based "on an incomplete review of the record." We are not persuaded.

¶ 49. As is obvious from our own review of the documents, many are of a nature that a quick glance conveys the substance. This would be all the more true

for the military judge in this case, where the vast majority of the documents relate to Riemer's military performance. And, it goes without saying that people vary greatly regarding how fast they read and absorb information.

¶ 50. Riemer does not identify what significant information the judge might have missed and, more importantly, does not demonstrate that less than three hours was not enough time for the judge to go through the documents and absorb what was significant in them. The substance of all of the significant mitigating evidence was highlighted by Riemer himself and by his two witnesses at the sentencing hearing. And, the volume and breadth of Riemer's awards and accomplishments are readily apparent from a review of just the table of contents of Riemer's mitigating evidence.

¶ 51. The judge's remarks indicate that he did absorb the significance of Riemer's mitigating evidence: "The record, as evidenced by the many exhibits that I did review, is that you are a good soldier, above average even." As Riemer's counsel acknowledged at oral argument, the gravamen of his argument is that the judge did not give Riemer's evidence the weight that Riemer believed the evidence was due. Riemer has not demonstrated that the judge failed to adequately review the documents.

### C. Consideration of Victim Impacts

¶ 52. Finally, Riemer argues that the judge relied on facts not supported by evidence available to him at sentencing. More specifically, Riemer argues that because the victims did not testify at the sentencing hearing, and there was no other evidence of victim

impact, there was no evidentiary basis for the judge's comments reflecting his consideration of the negative effect of Riemer's behavior on subordinate female soldiers.[10] In Riemer's words, the judge "created evidence out of thin air."

¶ 53. Leaving aside Riemer's apparent suggestion that it is not reasonable to assume that victims of sexual harassment by superiors suffer ill effects, Riemer is simply wrong that the sentencing hearing record does not provide an evidentiary basis for the judge's assumption to the contrary. At the plea and sentencing proceeding, Riemer himself testified that, for three of the six offenses to which he pleaded guilty, he did not realize the adverse impact his conduct was having on his victims until he heard their testimony at the preliminary hearing. A fourth offense to which he pleaded guilty, maltreatment, by definition "results in physical or mental harm or suffering" and includes sexual harassment. The nature of the crimes and Riemer's own comments support the judge's assumption that Riemer's conduct had adverse effects on his victims.

¶ 54. We reject Riemer's argument without relying on testimony presented by the victims at the preliminary hearing, as urged by the State. The State accurately notes that Riemer's descriptions of his conduct at the plea hearing greatly minimized the nature

---

[10] Riemer miscasts this argument in terms of the military judge relying on "inaccurate information." But Riemer does not actually argue that the judge's factual assumption was wrong. Rather, the substance of Riemer's argument is that because the military judge did not read the transcript of the preliminary hearing testimony, and because the victims did not speak at the sentencing hearing, the judge assumed facts—evidence of harm—without support in information presented at the plea and sentencing hearing.

and effect of his conduct as testified to by the victims at the preliminary hearing, and the State argues on appeal that the victims' testimony at that hearing supports the military judge's assumption of adverse victim impacts. Still, we conclude that even Riemer's own sanitized description at the plea and sentencing hearing is sufficient to support the judge's factual assumptions. Thus, we need not decide whether we could rely on the preliminary hearing testimony to reject Riemer's argument.

## CONCLUSION

¶ 55. For the reasons set forth above, we affirm.
*By the Court.*—Conviction and order affirmed.