# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 2, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1416**

**STATE OF WISCONSIN**

Cir. Ct. No. **2011CF78**

**IN COURT OF APPEALS**
**DISTRICT IV**

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DANIEL J. COUGHLIN,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Juneau County: JOHN PIER ROEMER and STACY A. SMITH, Judges. *Affirmed in part; reversed in part and cause remanded.*

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  After two mistrials were declared, a jury at a third trial returned verdicts finding Daniel Coughlin guilty on five counts of child sexual assault.  Four counts alleged assaults on the same child in 1989, 1990, 1991, and 1992; the fifth alleged an assault on a different child in 1990.  Coughlin argued in a direct appeal that the Double Jeopardy Clause barred successive prosecutions.  This court rejected that argument and affirmed in a summary order. *State v. Coughlin*, No. 2017AP1394-CR, unpublished op. and order (WI App June 13, 2018).

¶2    In 2020, Coughlin filed a postconviction motion under WIS. STAT. § 974.06 (2021-22) that raised new claims, which are the subjects of this appeal.[1] Coughlin appeals the postconviction court's denial of the motion in its entirety without holding a *Machner* hearing.[2]  The State argues that Coughlin is procedurally barred from raising the new issues under § 974.06 because he did not raise them in the direct appeal.  We conclude that he is not procedurally barred.

¶3    Turning to the merits, Coughlin contends that a new trial is required on Counts 1 - 4 because the trial court did not instruct the jury that it had to be unanimous in finding specific modes of sexual assault (sexual contact or sexual intercourse) and in finding specific acts of sexual assault (nature of touching or

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Separately, the Honorable John Pier Roemer ("the trial court") presided over the trial and entered the judgment of conviction and the Honorable Stacy A. Smith ("the postconviction court") addressed the postconviction motion at issue in this appeal.

[2] *See* *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (describing need for a circuit court hearing at which evidence can be adduced bearing on claims of ineffective assistance of counsel).

intrusion). However, because trial counsel did not object to the jury instructions on unanimity grounds, Coughlin's potential relief on this issue is limited to an opportunity to attempt to prove the following at a *Machner* hearing: that he is entitled to a new trial on Counts 1 - 4 because trial counsel was constitutionally ineffective in failing to object to the jury instructions and appellate counsel was constitutionally ineffective in failing to raise the issue. We conclude that a *Machner* hearing is required to address Coughlin's claims of ineffective assistance of both counsel on the unanimity issue.

¶4 One of Coughlin's challenges to the Count 5 conviction is that a new trial is required because the evidence is insufficient to show a violation of WIS. STAT. § 948.02(1). We conclude that the evidence was sufficient. Separately regarding Count 5, Coughlin points out (and the State does not dispute) that the jury instruction on this count omitted a key feature of one element of the offense, although this omission was not objected to by trial counsel. The parties disagree about whether this instructional error was harmless. We conclude that the State has failed to show that it is clear beyond a reasonable doubt that a rational jury would have found Coughlin guilty on Count 5 absent the error and therefore this issue must also be addressed at a *Machner* hearing.

¶5 Referencing all five counts, Coughlin argues that trial counsel was ineffective for failing to do each of the following, and that appellate counsel was ineffective for not addressing these failures of trial counsel: challenge or seek exclusion of highly prejudicial allegations, made by the mother of the victims in this case, that Coughlin sexually assaulted other children in addition to the two alleged victims in this case; object to references to sexual assault-related conduct

of Coughlin's brother, Donald Coughlin, and to Donald Coughlin's convictions for sexual assault;[3] and impeach witnesses called by the prosecution, including one of the two alleged victims in this case, with available impeachment material. We conclude that the circuit court on remand should also address the performance of both trial counsel and appellate counsel on these issues at the *Machner* hearing.

¶6    Accordingly, we affirm the postconviction court on the sufficiency issue but reverse its order denying Coughlin's postconviction motion without conducting a *Machner* hearing and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶7    The two alleged victims in this case are Coughlin's nephews, born two years apart ("the older nephew," "the younger nephew," collectively "the nephews"). As children, the nephews both worked at Coughlin's farm, including during the late 1980s and early 1990s. As adults, in 2009, the nephews told police that Coughlin had sexually assaulted them at the farm.

¶8    The operative criminal information charged the following offenses, each alleged to have been committed by Coughlin in the Town of Lyndon, Juneau County:

- Count 1: Summer 1989, "sexual contact … with" the older nephew when he was younger than 13, in violation of WIS. STAT. § 948.02(1).[4]

---

[3] We refer to Donald Coughlin by his full name and to his brother, the defendant in this case, by last name alone.

[4] First degree sexual assault of child is defined to include "sexual contact or sexual intercourse with a person who has not attained the age of 13 years." WIS. STAT. § 948.02(1)(e).

- Count 2: Summer 1990, "sexual contact … with" the older nephew when he was under 16, in violation of § 948.02(2).[5]

- Count 3: Summer 1991, "sexual contact … with" the older nephew when he was under 16, in violation of § 948.02(2).

- Count 4: Summer 1992, "sexual contact … with" the older nephew when he was under 16, in violation of § 948.02(2).

- Count 5: Summer 1990, "sexual contact … with" the younger nephew when he was under 13, in violation of § 948.02(1).

¶9    After two mistrials, the jury at the third trial found Coughlin guilty of "sexual assault of a child" on each of the five counts.

¶10    The older nephew testified in part to the following. Coughlin, on multiple occasions during the time periods for Counts 1 - 4, directed the older nephew to masturbate Coughlin, performed oral sex on the older nephew, had "sex [between the older nephew's] legs," and then would "reward" him with experiences like a trip to a water park.

¶11    The younger nephew testified in pertinent part that on one occasion Coughlin tied the younger nephew to the railing of a farm pen in which there were calves, pulled down the younger nephew's pants and underwear, "dribbled" milk on the younger nephew's penis, and allowed calves that were attracted to the milk to "suck[]" on the younger nephew's penis ("the alleged calf-pen incident").

¶12    The prosecution gave the following as its theory in opening statement. Having been sexually abused extensively in their home by their stepfather, Donald Coughlin, and conditioned by him not to report abuse, the

---

[5] Second degree sexual assault of a child is defined as "sexual contact or sexual intercourse with a person who has not attained the age of 16 years." WIS. STAT. § 948.02(2).

nephews were then groomed and sexually abused by Donald Coughlin's brother, the defendant here, at Coughlin's farm. The nephews did not contemporaneously report Coughlin's abuse, but they came forward in 2009 after learning that a cousin had reported being sexually assaulted by Donald Coughlin (after initially thinking that the cousin said that Coughlin had committed the sexual assault). In closing argument, the prosecution emphasized the lack of motive for the nephews to falsely accuse Coughlin, and also emphasized their motives to refrain from reporting and from lifting the "veil of secrecy" that hid the sexual assaults.

¶13    The defense in opening emphasized: the passage of time that made it difficult for the jury to be sure about events in the late 1980s and early 1990s, including difficulty being sure in which years the alleged assaults had occurred; inconsistent statements by the nephews; continuing cordial social relationships between the nephews and Coughlin and his wife in the years after the alleged sexual assaults; and evidence that the defense submitted would support a finding that alleged "grooming" by Coughlin had actually been non-sexual "locker room"-style "horseplay." In closing argument, trial counsel again argued that there was not consistent evidence regarding the timing of long-ago events and contended in part that "this prosecution started … as a result of blackmail and revenge," as reflected in a letter written by the mother of the nephews, which is discussed below. Trial counsel at times asserted that the nephews "lied," but at other times suggested that their alleged false statements "might be intentional," "but also … some of it might be unintentional."

¶14    After Coughlin was convicted and sentenced, appellate counsel (different from trial counsel) filed a direct appeal. Appellate counsel raised one argument: Coughlin's retrial after the first mistrial violated the Double Jeopardy Clause because the first mistrial was intentionally caused by a police detective

6

who delayed in producing video recordings to the defense. *Coughlin*, No. 2017AP1394-CR. This court rejected that argument on the ground that Coughlin's allegation that the detective had the improper motive to delay production of the recordings "rests entirely on speculation"; this court also noted that Coughlin attempted to attribute blame only to the detective, and not to the prosecution. *Id.*

¶15 Current counsel for Coughlin (different from trial counsel or appellate counsel) filed a motion under WIS. STAT. § 974.06 for postconviction relief, making the same claims now made on appeal. The postconviction court denied the motion in its entirety without holding an evidentiary hearing under *Machner*.

¶16 Coughlin appeals, seeking reversal of the order denying the postconviction motion and as relief primarily seeking a remand for an evidentiary hearing or a new trial.

## DISCUSSION

### I. PROCEDURAL BAR

¶17 As he must, Coughlin acknowledges that, because appellate counsel failed in the direct appeal to raise any of his current claims, the procedural bar under WIS. STAT. § 974.06 that we describe below applies to each claim, unless Coughlin provides a sufficient reason to explain that failure. *See State v. Balliette*, 2011 WI 79, ¶36, 336 Wis. 2d 358, 805 N.W.2d 334 ("claims that could have been raised in the defendant's direct appeal or in a previous § 974.06 motion are barred from being raised in a subsequent § 974.06 motion absent a showing of a sufficient reason why the claims were not raised on direct appeal or in a previous

§ 974.06 motion"); § 974.06(4). As an alleged sufficient reason, Coughlin argues that appellate counsel was constitutionally ineffective in failing to include his current claims in the direct appeal.[6] *See **Balliette***, 336 Wis. 2d 358, ¶37. The State argues that the procedural bar applies unless Coughlin demonstrates that his current claims are "clearly stronger" than the single claim that appellate counsel made on direct appeal and that Coughlin has failed to make this showing. *See **State v. Romero-Georgana***, 2014 WI 83, ¶¶45-46, 360 Wis. 2d 522, 849 N.W.2d 668 (performance of appellate counsel is not constitutionally ineffective for failure to bring claims unless the claims are "clearly stronger" than the claims brought by appellate counsel). Coughlin contends that the current claims are clearly stronger than the claim we rejected in the direct appeal. We assume without deciding, in favor of the State, that the "clearly stronger" test applies to Coughlin's current claims. However, we conclude that as the test is applied here Coughlin's claims are not procedurally barred, as we explain further below.[7]

¶18 When a motion filed under WIS. STAT. § 974.06 is sufficient on its face, the circuit court must hold an evidentiary hearing, unless the record as a whole conclusively demonstrates that the defendant is not entitled to relief. ***Balliette***, 336 Wis. 2d 358, ¶¶18, 50. Whether a § 974.06 motion merits an evidentiary hearing—including whether there is a sufficient reason to overcome

---

[6] As summarized in more detail below, to demonstrate that assistance of legal counsel was constitutionally ineffective, a defendant must establish both that counsel's performance was deficient and that the deficient performance was prejudicial. ***State v. Breitzman***, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.

[7] Coughlin alleges that his appellate counsel entirely failed to consider Coughlin's current claims—as opposed to considering them and then deciding not to pursue them—and that as a result the clearly stronger test does not apply. The State disagrees. However, we need not resolve this dispute, given our assumption that the test applies and our determination that the claims in this appeal are clearly stronger, as explained in the text.

the procedural bar—is a question of law that we review de novo. ***Romero-Georgana***, 360 Wis. 2d 522, ¶30. If, on the other hand, the motion does not raise sufficient facts, "'or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief,'" then the circuit court has the discretion to grant or deny an evidentiary hearing. ***Balliette***, 336 Wis. 2d 358, ¶18 (quoted source omitted). In that case, we review for an erroneous exercise of discretion. ***Romero-Georgana***, 360 Wis. 2d 522, ¶30.

¶19 Here, on the procedural bar issue the postconviction court said, without elaboration, "the court does not find sufficient reason for the failure" by Coughlin to raise the current issues in the direct appeal.

¶20 We turn to our application of the "clearly stronger" test, first addressing the claim brought in the direct appeal. In our summary opinion resolving the direct appeal we essentially concluded that the double jeopardy claim was meritless. *See **Coughlin***, No. 2017AP1394-CR. Our summary order explained that Coughlin's core argument rested "entirely on speculation." *See **id.*** Further, we suggested that, even if that were not the case, Coughlin failed to explain how the allegedly improper motivation of the detective could be or should be attributed to the prosecution for purposes of double jeopardy analysis. *See **id.*** Moreover, as Coughlin now aptly notes, the State on appeal does not provide a developed argument regarding the merits of the direct appeal.[8] In effect, the State concedes that the direct appeal lacked merit.

---

[8] The State makes one general point but it is not apt. Its point is that effective appellate advocacy involves "precision attack[s]" as opposed to "kitchen-sink approach[es]," and for this proposition the State accurately cites ***Knox v. United States***, 400 F.3d 519, 521 (7th Cir. 2005). But the State fails to develop an argument that the direct appeal here could be described as a "precision attack" with potential merit. We conclude that it was not.

¶21    Regarding the current claims, as reflected in our discussion below, Coughlin prevails on appeal. It is true that we reject some specific arguments Coughlin makes, most notably his sufficiency challenge to Count 5, but Coughlin prevails on arguments entitling him to an evidentiary hearing that could establish a basis for a new trial on Counts 1 – 4, on Count 5, or on all counts.

¶22    In arguing that the clearly stronger test is not met, the State briefly asserts two points of comparison between the direct appeal and this one. But neither helps the State's position given the lack of merit in the direct appeal. First, the State contends that it is significant that trial counsel preserved the basis for the double jeopardy claim through a contemporaneous objection (*i.e.*, moving at the first trial for a mistrial), while the current claims are all based on issues for which there was no contemporaneous objection. Of course, all other things being equal, a preserved claim of error is typically stronger than an unpreserved claim. But here the mistrial and follow-up motions in the trial court based on the Double Jeopardy Clause did the defense no good in the direct appeal because the claim brought in that appeal was meritless. In contrast, today we grant forms of relief to Coughlin in this appeal despite the lack of objections at trial.

¶23    Second, the State argues that the remedy sought in the direct appeal—dismissal of the case with prejudice—was more "substantial" than any remedy sought in the current motion. The remedy of dismissal with prejudice would indeed be substantial. Further, in a given case the value of the relief sought could bolster the relative strength of an issue. But here, given that Coughlin had no chance of obtaining this relief, the potential value of the relief sought counts for little.

¶24    In sum on this issue, we conclude that the procedural bar does not apply to preclude Coughlin from bringing the current claims challenging his convictions.

¶25    We emphasize that our application of the clearly stronger test in Coughlin's favor resolves only the procedural bar issue, and not the separate issues of whether trial counsel or appellate counsel were in fact constitutionally ineffective.  Given the absence of a ***Machner*** hearing, there is no factual record across issues in this appeal as to whether trial counsel or appellate counsel might have had "good reasons for not pursuing" the claims that Coughlin now raises. *See **Romero-Georgana***, 360 Wis. 2d 522, ¶¶46, 62.

## II.  UNANIMITY INSTRUCTIONAL ERROR (Counts 1 - 4)

¶26    Coughlin argues that a new trial is required on Counts 1 - 4 because the trial court did not instruct the jury that it was obligated to reach a unanimous consensus regarding the specific modes and the specific acts of sexual assault alleged for each count.  Coughlin does not dispute that his trial counsel did not make a contemporaneous objection that the jury instructions failed to require unanimity and that this generally constitutes a forfeiture of the issue.  *See* WIS. STAT. § 805.13(3) (failure to object at jury instruction conference "constitutes a waiver of any error in the proposed instructions or verdict").  But Coughlin contends that we should reverse based on our discretionary authority under WIS. STAT. § 752.35, or in the alternative that we should require the circuit court to conduct an evidentiary hearing addressing the claim of ineffective assistance of trial counsel for failing to make a contemporaneous objection, compounded by ineffective assistance of appellate counsel for not raising trial counsel's failure in the direct appeal.

¶27    On this issue, the postconviction court said, without elaboration, that it "does not find any violation of due process."

¶28    We now provide additional background on this issue, followed by pertinent legal standards regarding ineffective assistance of counsel and error in instructing a jury. Then we explain our conclusion that Coughlin is entitled to a *Machner* hearing in the circuit court following remand because he alleges sufficient facts on the unanimity issue which, if true, could entitle him to relief based in part on points that the State does not dispute. *See State v. Sholar*, 2018 WI 53, ¶50, 381 Wis. 2d 560, 912 N.W.2d 89 (citing *Machner*). More specifically, having considered the arguments now presented by the parties, we conclude that Coughlin has shown that his due process rights were violated, which constituted prejudice under the proper test, but that a *Machner* hearing is required to determine whether either trial counsel or appellate counsel had a strategic reason or other proper reasons not to pursue this issue, such that the performance of that attorney was not deficient.

## A. Additional Background

¶29    To recap, Count 1 charged first degree sexual assault of the older nephew, with elements that include "sexual contact or sexual intercourse with a person who has not attained the age of 13 years," under WIS. STAT. § 948.02(1)(e). Counts 2 – 4 charged second degree sexual assault of the older nephew, with elements that include "sexual contact or sexual intercourse with a person who has not attained the age of 16 years," under § 948.02(2).

¶30    In the jury instructions, the trial court accurately defined these elements. The court further accurately defined for the jury the terms "sexual

contact" and "sexual intercourse," which are different. *See* WIS JI—CRIMINAL 2101A and 2101B.[9]

¶31     However, Coughlin argues that his right to a unanimous verdict was violated because the jurors were not properly instructed and also not given verdicts that directed them to unanimously agree, for each of Counts 1 - 4, whether Coughlin had sexual contact or instead sexual intercourse with the older nephew, or required them to unanimously agree on a specific act that he committed with

---

[9] Consistent with WIS. STAT. § 948.01(5), the instruction defining "sexual contact" stated:

> Sexual contact is an intentional touching of the buttock, groin, or penis of [the older nephew] by [Coughlin]. The touching may be of the buttock, groin, or penis directly or it may be through the clothing. The touching may be done by any body part or by any object, but it must be an intentional touching.

> Sexual contact also requires that [Coughlin] acted with intent to become sexually aroused or gratified.

> Sexual contact is a touching by [the older nephew] of the buttock, groin, or penis of [Coughlin], if [Coughlin] intentionally caused or allowed [the older nephew] to do that touching. The touching may be of the buttock, groin, or penis directly or it may be through the clothing.

> Sexual contact also requires that the defendant acted with intent to become sexually aroused or gratified.

Consistent with WIS. STAT. § 948.01(6), the instruction defining "sexual intercourse" stated:

> Sexual intercourse means any intrusion, however slight, by any part of a person's body or object, into the genital or anal opening of another. Emission of semen is not required.

> **Meaning of "Sexual Intercourse"**

> "Sexual intercourse" includes fellatio.

> Fellatio means oral contact with the penis.

respect to the older nephew that constituted sexual contact or sexual intercourse. Coughlin bases this argument on a combination of three factors that he contends contributed to "a perfect storm of error" on the unanimity issue. We introduce and address these three factors below.

### B. Legal Standards Governing Ineffective Assistance, Instructional Error, And Juror Unanimity

¶32 This court has summarized pertinent standards regarding ineffective assistance in the context of a claimed jury instruction error:

> [A] defendant claiming ineffective assistance must establish both deficient performance and prejudice, … and a claim predicated on a failure to challenge a *correct* trial court ruling cannot establish either.
>
> Similarly, because a defendant claiming ineffective assistance of postconviction counsel must establish postconviction counsel's failure to challenge trial counsel's performance, no such claim can succeed if predicated upon trial counsel's failure to challenge a *correct* trial court ruling. Thus, to establish that postconviction or appellate counsel was ineffective, a defendant bears the burden of proving that trial counsel's performance was deficient and prejudicial.
>
> A trial court has broad discretion in instructing a jury but must exercise that discretion in order to fully and fairly inform the jury of the applicable rules of law. Whether a jury instruction is appropriate, under the given facts of a case, is a legal issue subject to independent review. On review, the challenged words of jury instructions are not evaluated in isolation. Rather, jury instructions "must be viewed in the context of the overall charge." Relief is not warranted unless the court is "persuaded that the instructions, when viewed as a whole, misstated the law or misdirected the jury." Whether a jury instruction violated a defendant's right to due process is a legal issue subject to de novo review.

*State v. Ziebart*, 2003 WI App 258, ¶¶14-16, 268 Wis. 2d 468, 673 N.W.2d 369 (emphases in original) (cited authority omitted). In addition, the test for deficient

performance is whether counsel's representation fell below objective standards of reasonableness, and prejudice is shown if our confidence in the outcome is placed in such doubt that the conviction is fundamentally unfair or unreliable. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

¶33 Also notable here, given the fact that Coughlin has raised multiple allegations of ineffective assistance of trial counsel, is the following consideration regarding the prejudice prong. "[T]he cumulative effect of several deficient acts or omissions may, in certain instances, also undermine a reviewing court's confidence in the outcome of a proceeding." *State v. Thiel*, 2003 WI 111, ¶60, 264 Wis. 2d 571, 665 N.W.2d 305. That is, a court may consider "the effects of multiple incidents of deficient performance in determining whether the overall impact of the deficiencies satisfied the standard for a new trial under *Strickland*." *Thiel*, 264 Wis. 2d 571, ¶60.

¶34 Regarding the requirement of juror unanimity, our supreme court has explained the following:

> The Wisconsin Constitution's guarantee of a right to trial by jury includes the right to a unanimous verdict with respect to the ultimate issue of guilt or innocence. WIS. CONST., art. I, §§ 5 and 7; *Holland v. State*, 91 Wis. 2d 134, 138, 280 N.W.2d 288 (1979); *Vogel v. State*, 138 Wis. 315, 332-33, 119 N.W. 190 (1909); *Boldt v. State*, 72 Wis. 7, 14-16, 38 N.W. 177 (1888). "The principal justification for the unanimity requirement is that it ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense." *State v. Lomagro*, 113 Wis. 2d 582, 591, 335 N.W.2d 583 (1983); *see also Holland*, 91 Wis. 2d at 138 (requirement of jury unanimity linked to due process requirement of proof of each element of the offense beyond a reasonable doubt, citing *In Re Winship*, 397 U.S. 358 (1970)).

*State v. Derango*, 2000 WI 89, ¶13, 236 Wis. 2d 721, 613 N.W.2d 833.

¶35 Further, if a jury is allowed to treat separately charged acts that must be found unanimously as merely alternative means of committing a charged offense and is given vague verdict forms that only exacerbate the problem, then the Sixth Amendment and the Fifth Amendment have been violated, and the defendant has been prejudiced. *See State v. Marcum*, 166 Wis. 2d 908, 923-25, 480 N.W.2d 545 (Ct. App. 1992).

¶36 Putting these standards together in the current context, if the jury instructions here did not deprive Coughlin of the right to juror unanimity, there is not a viable claim of ineffective assistance by trial counsel or by appellate counsel. But if the jury instructions did deprive him of that right, he is entitled to a *Machner* hearing in the circuit court to attempt to prove that he is entitled to relief. *See Balliette*, 336 Wis. 2d 358, ¶¶36, 79 (hearing merited if the allegations in a WIS. STAT. § 974.06 motion provide sufficient material facts that, if proven, demonstrate an entitlement to the relief sought). More specifically, while the prejudice prong of the ineffective assistance test would be met, the hearing would give the parties an opportunity to present evidence and arguments on the deficiency prong: specifically, whether the relevant performance of trial counsel and of appellate counsel, under the respective circumstances they faced, fell below objective standards of reasonableness.

## C. Analysis

¶37 We now address in turn the three factors that Coughlin contends together deprived him of his right to a unanimous verdict for each of Counts 1 - 4: ambiguity about the modes of sexual assault alleged; the fact that three separate types of acts of sexual assault were alleged for each count; and the trial court's modification of WIS JI—CRIMINAL 517.

¶38    **Modes of sexual assault alleged**.  The jury instructions used the ambiguous conjunction "sexual contact and/or intercourse" regarding each count, instead of either specifying "sexual contact" or "sexual intercourse" for each or specifying particular acts within each count as constituting an act of alleged "sexual contact" or "sexual intercourse."    Coughlin argues that use of this ambiguous conjunction invited jurors to think that they did not need to unanimously agree on the mode of sexual assault corresponding to each count: sexual contact or sexual intercourse.

¶39    In addition, the verdict form asked the jury to determine only whether—as to each count, 1 - 4, with its specified time period and identified victim—Coughlin was guilty of the generic conduct of "sexual assault of a child," not whether he had engaged in "sexual contact" or "sexual intercourse" with that child during the specified time period.

¶40    Coughlin argues that the jury here had to reach unanimity on each count as to whether an act of sexual contact occurred or, instead, an act of sexual intercourse.  Stated in case law terms, Coughlin's position is that the charged acts of sexual intercourse and the charged acts of sexual contact were "conceptually distinct," and therefore the trial court erred in failing to instruct the jury that unanimity was required as to which of these two modes of sexual assault the jury was finding occurred beyond a reasonable doubt.  *See **Lomagro***, 113 Wis. 2d at 592-93 (concluding that circuit court did not err in failing to instruct jury that unanimity required as to the specific act constituting charged sexual assault based on evidence of multiple acts that could constitute the offense; and stating, "If there is only one crime, jury unanimity on the particular alternative means of committing the crime is required only if the acts are *conceptually distinct*." (emphasis added)).  It is not disputed in this appeal that, as discussed further

17

below, Counts 1 - 4 involved allegations of individual incidents of sexual contact or of sexual intercourse, alleged to have occurred for each count at different times over the course of an entire summer. *Cf. Lomagro*, 113 Wis. 2d at 583-86, 598 (guarantee of jury unanimity not violated when numerous acts of sexual violence were alleged over a two-hour period and were presented to the jury as one count of sexual assault, deemed by our supreme court to have been a single encounter involving "one continuing criminal episode and properly chargeable as one offense"); *see also State v. McMahon*, 186 Wis. 2d 68, 82, 519 N.W.2d 621 (Ct. App. 1994) (noting the absence of case law concluding that the allegation of multiple sexual acts occurring over the course of more than one month could amount to a single, continuous transaction.).

¶41    The State does not dispute any aspect of Coughlin's arguments on these points regarding the alternative modes of sexual assault alleged. Thus, the State implicitly concedes that the set of ambiguous conjunction instructions and verdict forms could have, at least standing alone, misled the jury as to the unanimity requirement for Counts 1 - 4.

¶42    **Three types of specific acts of sexual assault alleged**. The State also does not dispute Coughlin's position that there was evidence at trial that Coughlin committed each of the following acts during each charged time period: (1) rubbed his penis between the older nephew's legs (a form of sexual contact); (2) masturbated the older nephew or had the older nephew masturbate him (forms of sexual contact); or (3) performed oral sex on the older nephew (a form of sexual intercourse). Coughlin argues that the evidence and argument at trial would have led the jury to believe that, in order to return guilty verdicts as to each count, it was not required to unanimously agree as to which of these three acts Coughlin committed regarding that count. For example, according to Coughlin, there is the

18

possibility that, for any given count, some jurors found that sexual contact in the form of penis touching leg occurred (but the other acts of alleged assault did not), and other jurors found that sexual intercourse in the form of oral sex occurred (but not the other acts). In fact, Coughlin argues, the range of possible failures to unanimously agree was broad because the prosecution presented evidence of "far more than twelve separate acts of assault—three different types, each occurring during all four charging periods, multiple times in each period."

¶43    Coughlin relies on *Marcum* for the proposition that it violates a defendant's right to due process to, in the words of *Marcum*, leave "the door open to the possibility of a fragmented or patchwork verdict" in which jurors might fail to reach unanimous agreement as to an act of sexual assault for a given count. *See Marcum*, 166 Wis. 2d at 920. In *Marcum*, three counts of alleged sexual assault through "sexual contact" on the verdict form were worded identically, even though the evidence supporting each count was distinct, and we concluded that it was problematic that a conviction on a given charge might have occurred even if all jurors did not agree regarding the particular incident relating to that charge. *Id.* at 913, 919-223.

¶44    While the court's reasoning in *Marcum* turned in part on the fact that the jury in *Marcum* acquitted on two counts, *see id.* at 919-20, the State does not make any argument based on that fact. Instead, as with the first factor regarding modes of sexual assault, the State implicitly concedes the point regarding the three types of sexual assaults by not contesting it. Specifically, it implicitly concedes that the presentation of evidence of the three types of acts, together with related arguments of the parties, at least considered in isolation, could have misled the jury regarding the need for unanimity.

¶45     To repeat, the State does not argue that all, or some subsets of, the multiple acts of sexual assault alleged here were "part of 'one continuous criminal transaction,'" so that it would "not matter that multiple acts occurred."  *See McMahon*, 186 Wis. 2d at 82 (quoting *Lomagro*, 113 Wis. 2d at 589).  Nor does the State more generally argue that what was at issue here were merely multiple different modes of committing the offense charged in each count, as opposed to multiple offenses.  *See State v. Derango*, 2000 WI 89, ¶¶13-14, 236 Wis. 2d 721, 613 N.W.2d 833 (explaining that "[t]he threshold question in a unanimity challenge … is whether the statute creates multiple offenses or a single offense with multiple modes of commission").

¶46     Further, we see no room for any potential arguments along these lines based on the evidence introduced at trial and the nature of Counts 1 – 4.  The older nephew testified that the three types of sexual contact or sexual intercourse occurred on separate days and in separate locations, and in closing the prosecutor argued that each of the three types of alleged sexual assault occurred during each of the four charging periods.  The State does not dispute that this mirrors the problem described in *Marcum* nor does the State attempt to analogize the facts here to the facts in cases, such as *Lomagro*, in which a unanimity instruction was not required.

¶47     **Trial court's modification of WIS JI—CRIMINAL 517**.  The State's substantive argument on the unanimity issue is that the two factors just summarized and relied upon by Coughlin did not create a unanimity violation because WIS JI—CRIMINAL 517, as modified, provided the required unanimity guidance.  In contrast, Coughlin argues that the modification of this instruction was a third factor that contributed to a unanimity violation because it was not only insufficient, but it also served to "exacerbate[]" the unanimity problem.  As we

explain below, we conclude that the trial court omitted the portion of the instruction that actually conveys the requirement of unanimity, that what remains is ambiguous regarding unanimity, and that this, together with the other two factors cited by Coughlin, contributed to create a due process violation on Counts 1 - 4.

¶48    By way of additional background, WIS JI—CRIMINAL 517 is entitled "Jury Agreement:  Evidence Of More Than One Act Introduced To Prove One Charge."  Unmodified, it states:

> The defendant is charged with one count of [offense].  However, evidence has been introduced of more than one act, any one of which may constitute [offense].
>
> Before you may return a verdict of guilty, all 12 jurors must be satisfied beyond a reasonable doubt that the defendant committed the same act and that the act constituted the crime charged.

The trial court's modification omitted the first two sentences and changed the remaining sentence, giving the following instructions for Count 1 and then for Counts 2 - 4:

> Before you may find the defendant guilty of Count 1 of the amended information you must be satisfied beyond a reasonable doubt that the defendant committed the same act during the charging period, and that act constituted the charged crime.
>
> ….
>
> Before you may find the defendant guilty of second degree sexual assault of a child who has not attained the age of 16 years, as contained in count 2 of the amended information, as contained in count 3 of the amended information, and as contained in count 4 of the amended information, you must be satisfied beyond a reasonable doubt that the defendant committed the same act during the charging period and the act constituted the charged crime.

Thus, the trial court omitted the phrase "all 12 jurors must be satisfied" from the pattern instruction and substituted the phrase "you must be satisfied" to produce the following: "Before you may find the defendant guilty … you must be satisfied beyond a reasonable doubt that the defendant committed the same act during the charging period and that the act constituted the charged crime."

¶49      The State essentially argues that the only reasonable interpretation of the modified instruction is that the word "you" in the phrase "you must be satisfied" meant words to the effect of, "you, all 12 jurors," and therefore the jury was correctly and sufficiently instructed on the unanimity issue.  For support, the State directs us to various uses of the word "you" in instructions other than WIS JI—CRIMINAL 517, when "you" means "the jury," including in the final paragraph of the opening instruction that the trial court gave here:

> If any member of the jury has an impression of my opinion as to whether the defendant is guilty or not guilty, disregard that impression entirely and decide the issues of fact solely as you view the evidence. *You, the jury,* are the sole judges of the facts, and the court is the judge of the law only.

(Emphasis added.)  From these references, the State's argument proceeds, the jury would have understood that the "you" in the modified fragment of WIS JI—CRIMINAL 517 stating, "[b]efore you may find the defendant guilty … you must be satisfied," meant, "you, all 12 jurors."

¶50      As part of its argument, the State contends that it would be illogical to interpret the language at issue—"you must be satisfied … that the defendant committed the same act during the charging period, and that act constituted the charged crime"—to mean that, as the State puts it, each juror "must agree with

22

*herself* about the specific act that constituted the crime charged." (Emphasis in original.)[10]

¶51   We now explain why we reject these arguments by the State regarding the likely effect of the modified WIS JI—CRIMINAL 517 and further conclude that the combined effects of the three factors cited by Coughlin deprived him of his due process right to a trial at which each juror was convinced beyond a reasonable doubt that the prosecution proved each essential element of each offense.

¶52   We conclude that the modified instruction is ambiguous. One possible interpretation, consistent with the State's argument, would be the following. "You" would refer to the jury acting collectively, and one feasible inference from that collective meaning is that all of the jurors had to agree on a particular mode and act of sexual assault for each count. There is possible support, as the State argues, in the existence of the earlier instruction referring to "You, the jury." Considered together with all of the language of the modified WIS JI—CRIMINAL 517 this additional clue makes this one feasible interpretation.

¶53   But there is at least one other feasible interpretation, one that did not clarify that unanimity was required and in fact could have misled the jury to think that unanimity was not required, particularly in light of the other two factors discussed above. This interpretation would be that "you," a single juror, must be

---

[10] The State also directs us to the use of "you" in the burden-of-proof instruction, WIS JI—CRIMINAL 140, which states, "Before you can return a verdict of guilty, the evidence must satisfy you beyond a reasonable doubt that the defendant is guilty." But the terms of this instruction do not unambiguously give "you" a collective meaning, so it does not add to the analysis.

certain in finding that a single act occurred and that the other jurors must also be certain in finding single acts, even if those might be different acts from the one "you" found. We disagree with the State that this is an illogical interpretation because it would require a juror to "agree with *herself.*" Instead, this wording would be one way of emphasizing the necessity that each juror, independently, be certain that one act in fact occurred during the charging period and that this act in fact constituted the charged crime. Under this interpretation, each juror must him or herself "be satisfied" regarding the occurrence of "the same act," as opposed to each juror being allowed to take a "where there's smoke, there must be fire" approach of convicting Coughlin on a count based on the mere existence of multiple allegations during the pertinent time period. The State seems to assume that jurors would necessarily latch onto the phrase "same act," in the way that an attorney might think to do, and deduce from that phrase that all 12 jurors have to agree. We conclude that this would be an unreasonable assumption.

¶54 We observe that the jury here, like the jury in **Marcum**, received the general unanimity instruction, WIS JI—CRIMINAL 515: "This is a criminal, not a civil, case; therefore, before the jury may return a verdict which may legally be received, the verdict must be reached unanimously. In a criminal case, all 12 jurors must agree in order to arrive at a verdict." *See Marcum*, 166 Wis. 2d at 917-18. But to say that each verdict must be reached unanimously does not address the specific issue raised by Coughlin; Coughlin does not question that all jurors agreed to guilty verdicts of "sexual assault" for each of Counts 1 - 4.

¶55 As for the wording of the opening instruction that the trial court gave, now relied on by the State, we note that it undercuts the State's specific point that this phrase—"You, the jury, are the sole judges of the facts"—addresses

the jurors *as a collection of individuals.* They are not addressed as a single "judge" of the facts; they are addressed as individual "judges" of the facts.

¶56    Although the parties do not note this, WIS JI—CRIMINAL 517 is offered by the Criminal Jury Instructions Committee as optional; it "should be considered for use when a defendant is charged with multiple counts and evidence of more than one act is offered as proof of one or more of those counts."[11]  WIS JI—CRIMINAL 517-C.   Citing authority that includes *Marcum*, the committee states that "there clearly are situations" in which giving the instruction "will cure what may otherwise be reversible error."  WIS JI—CRIMINAL 517-C.

¶57    We need not decide whether the trial court's modification of WIS JI—CRIMINAL 517 alone deprived Coughlin of the right to juror unanimity, without the additional two factors—involving the two modes of sexual assault and the three types of sexual assault alleged—that the State concedes through silence could have contributed to misunderstandings by the jury.  Instead, we reject the State's only argument:   as modified, WIS JI—CRIMINAL 517 correctly and sufficiently directed the jury that it must be unanimous in deciding on the mode and act at issue for each of the Counts 1 - 4, neutralizing the effects of the other two factors.  Having rejected the State's only argument, we conclude that this was, as in *Marcum*, "not only a sixth amendment unanimity problem, it is also a fifth

---

[11] The trial court here modified the work of the committee, which we are to view as "persuasive," but "not infallible."  *See State v. Waalen*, 130 Wis. 2d 18, 26, 386 N.W.2d 47 (1986), *abrogated on other grounds by State v. Hubbard*, 2008 WI 92, ¶¶45-47, 313 Wis. 2d 1, 752 N.W.2d 839.  While circuit courts have "wide discretion in developing the specific language of jury instructions," it is prudent for circuit courts to consider whether variations from pattern instruction are necessary "because they do represent a painstaking effort to accurately state the law and provide statewide uniformity."  *See State v. Foster*, 191 Wis. 2d 14, 26-27, 528 N.W.2d 22 (Ct. App. 1995).

amendment due process problem," due to lack of direction to the jury about the need for unanimity and the vague verdict forms. *See **Marcum***, 166 Wis. 2d at 923.

¶58 In sum on this issue, we conclude that Coughlin has shown that he was deprived of his right to unanimous verdicts with respect to Counts 1 - 4. As we have explained, our conclusion on this issue establishes the prejudice prong of ineffective assistance for both trial counsel and appellate counsel. What remains to be determined, based on evidence presented at a ***Machner*** hearing, is whether either or both counsel performed deficiently in failing to raise this issue.[12]

### III. COUNT 5

¶59 Coughlin raises three objections to his conviction on Count 5 which, to repeat, alleged a violation of WIS. STAT. § 948.02(1) involving the younger nephew. We first identify and address Coughlin's two objections to the

---

[12] Coughlin argues that we should order a new trial on Counts 1 - 4 in the interest of justice using our discretionary authority under WIS. STAT. § 752.35. Section 752.35 provides:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

We decline to exercise our discretion in this manner because we cannot say that "the real controversy has not been fully tried, or that it is probable that justice has … miscarried," so that this case belongs to the category of "most exceptional cases" that call for this unusual remedy. *See **State v. Schutte***, 2006 WI App 135, ¶62, 295 Wis. 2d 256, 720 N.W.2d 469.

sufficiency of the evidence and then turn to his objection based on a missing feature of an element of the jury instruction. We reject the sufficiency arguments. But we agree with Coughlin that omitting the instruction feature was an error that we cannot conclude is harmless. Therefore, Coughlin is entitled to attempt to prove deficient performance of both trial counsel and appellate counsel at a *Machner* hearing.

¶60　As background to all three of Coughlin's arguments on Count 5, it is relevant that the trial court gave the following instruction as part of its charge:

> Sexual contact means any intentional touching by the defendant, either directly or through the clothing by the use of any object, if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant, or sexually arousing or gratifying the defendant.

*See also* WIS. STAT. § 948.01(5)(a)2. (defining in part "sexual contact").

## A. Sufficiency

¶61　Coughlin argues that appellate counsel was constitutionally ineffective in failing to raise a claim of ineffective assistance of trial counsel for not challenging the sufficiency of the evidence on Count 5. On this issue, the postconviction court said, "I believe that there was sufficient evidence."

¶62　We conclude that Coughlin has not shown that he is entitled to have the sufficiency of the evidence on Count 5 addressed as an issue at the *Machner* hearing.

¶63　An appellate court reviewing whether the evidence is sufficient to support a conviction "may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so

lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." ***State v. Poellinger***, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it." ***Id.*** If Coughlin were to ultimately prevail on this issue, the Double Jeopardy Clause would apply and no retrial on Count 5 would be possible. *See* ***State v. Henning***, 2004 WI 89, ¶22, 273 Wis. 2d 352, 681 N.W.2d 871 ("[D]ouble jeopardy principles prevent a defendant from being retried when a court overturns his [or her] conviction due to insufficient evidence.").

¶64 Coughlin contends that the evidence is insufficient to show "sexual contact" under either of the two theories that the prosecution offered for this count.[13] Those two theories were based on testimony of the younger nephew. The

---

[13] We agree with the State that a sufficiency-of-the-evidence claim is subject to analysis under the procedural bar of WIS. STAT. § 974.06 and reject Coughlin's argument to the contrary. *See* ***State v. Kaster***, 2006 WI App 72, ¶9, 292 Wis. 2d 252, 714 N.W.2d 238. Coughlin's reliance on ***State v. Miller***, 2009 WI App 111, 320 Wis. 2d 724, 772 N.W.2d 188, is misplaced. In ***Miller***, this court treated the procedural bar issue as forfeited by the State, and the discussion was about whether sufficiency of the evidence claims have a constitutional dimension so that they may be raised in § 974.06 motions and did not address the procedural bar. *See id.*, ¶¶23-30.

However, we reject the State's only argument for applying the procedural bar to Coughlin's sufficiency challenge to Count 5. The State's argument is that Coughlin cannot now contend that a sufficient reason for failure to raise the sufficiency arguments is that appellate counsel was constitutionally ineffective in failing to raise the arguments based on the failure of Coughlin to bring in this court a petition for habeas corpus under ***State v. Knight***, 168 Wis. 2d 509, 484 N.W.2d 540 (1992). As Coughlin points out, the record establishes that he brought such a petition and we issued an order explaining that Coughlin could use this appeal to address the issue.

This resolves the only arguments on this point. The State does not argue that the current sufficiency arguments are not clearly stronger than the issue raised in the direct appeal, and therefore we deem the State to have forfeited any such argument.

younger nephew testified that Coughlin: (1) directed the younger nephew to masturbate the younger nephew himself (as Coughlin puts the concept, "directed self-masturbation"); and (2) engaged in the alleged calf-pen incident, described above. Coughlin argues that—assuming the jury was properly instructed on Count 5 despite an omitted element, an issue separately discussed in the next subsection—neither of these alleged acts constitutes "sexual contact" and that therefore there was insufficient evidence to support the conviction.

¶65 The State now concedes one of Coughlin's arguments regarding the directed self-masturbation theory. The concession is that, because the jury was instructed on Count 5 that "[s]exual contact means any intentional touching *by the defendant*," the jury could not have relied on this theory because the alleged touching would have been by the younger nephew himself.

¶66 This leaves Coughlin's argument that the alleged calf-pen incident could not have constituted "sexual contact." He contends that this prosecution theory had to fail, regardless of the facts found by the jury. This is the case, he contends, because use of a calf cannot constitute "the use of any object" as that phrase is used in the following portion of the Count 5 instruction, quoted above: "intentional touching by the defendant, either directly or through the clothing by *the use of any object*." (This is an accurate quotation of part of the definition of "sexual contact" in WIS. STAT. § 948.01(5)(a)2.)

¶67 Coughlin's argument ignores the meaning of the phrase "any object." Instead, it rests entirely on the fact that the legislature has criminalized sexual acts involving animals under statutory subparts explicitly addressing "bestiality," and from this fact Coughlin argues that it would be "surplusage" or "redundant" to interpret "any object" in the definition of "sexual contact" in WIS.

STAT. § 948.01(5)(a)2. to include a "live animal."[14]    *See* WIS. STAT. §§ 944.18(2)(h) (criminalizing "forc[ing], coerc[ing], entic[ing], or encourag[ing] a child who has not attained the age of 13 years to engage in sexual contact with an animal"); 944.18(1)(d) (providing a definition of "sexual contact" specific to human-animal contacts); 948.01(7)(b) (defining "[s]exually explicit conduct" to include "actual or simulated" "[b]estiality"). As part of this argument, Coughlin notes that a violation of § 944.18(2)(h) is a Class F felony, *see* § 944.18(3)(a), while WIS. STAT. § 948.02(1)(e) provides that its violation is a Class B felony. Based on these statutory references, Coughlin argues that the legislature has implicitly treated "bestiality" as "separate and distinct conduct" from child sexual assault, with the result that the definition of "any object" must exclude all live animals.

¶68    The State does not dispute that there was no evidence at trial that could have supported a guilty verdict on Count 5 regarding the alleged calf-pen incident if contact between a calf and the younger nephew's penis could not constitute "sexual contact" allegedly caused by Coughlin.[15] Further, if the State intends to dispute the merits of Coughlin's argument that a calf cannot be "any object," its effort is slight at best; the State merely implies that the argument lacks

---

[14] Presumably Coughlin uses the phrase "live animal" to acknowledge the possibility of a legislative intent in WIS. STAT. § 948.01(5)(a)2. to treat parts of dead animals as "any object" in this context.

[15] For example, the State does not argue that the milk that Coughlin allegedly "dribbled" onto the younger nephew's penis as part of the alleged calf-pen incident could be considered "any object," and we do not address this as a potential issue.

merit.[16] Nevertheless, given the lack of merit to Coughlin's argument, we reject it on that basis.

¶69 First, as noted above, Coughlin does not even attempt to account for the meaning of "any object," which is a vastly expansive phrase. "Object" is not defined in WIS. STAT. § 948.01, but a common dictionary definition is "anything visible or tangible; a material product or substance; as, he saw an *object* in the dark and felt it." *Object*, WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY (2d ed. 1979).[17] Further, the determiner "any" serves to expand "object" to cover every type of "object" whatsoever. A live animal such as a calf easily fits this definition.

¶70 Second, Coughlin fails to support the argument that he does make: that there is a bright (albeit merely implied) line in the Wisconsin Statutes between all forms of "bestiality" and all forms of child sexual assault that involve live animals. It is true that the legislature has decided to criminalize certain conduct, such as "[s]exual exploitation of a child," WIS. STAT. § 948.05; and "[p]ossession of child pornography," WIS. STAT. § 948.12; based in part on a definition of "[s]exually explicit conduct" that includes "[b]estiality," WIS. STAT.

---

[16] The State's argument on this issue is that trial counsel and appellate counsel could not have performed deficiently because there was no settled law on the issue at the time of trial. *See State v. Lemberger*, 2017 WI 39, ¶¶18, 33, 374 Wis. 2d 617, 893 N.W.2d 232 (counsel's failure to pursue argument that "require[s] the resolution of unsettled legal questions generally does not render" counsel's performance deficient; "the law or duty" must be "clear such that reasonable counsel should know enough to raise the issue") (quoted sources omitted). Coughlin counters in part that we should treat the relative perspectives of trial counsel and appellate counsel differently and that this sufficiency issue was not unsettled at least for purposes of the direct appeal. We do not rely on the rule from *Lemberger* and instead resolve this issue, as explained in the text, based on the lack of support for Coughlin's argument and the obvious reasons that his argument fails.

[17] "We may use a dictionary to establish the common meaning of a word." *Lemmer v. Schunk*, 2008 WI App 157, ¶10, 314 Wis. 2d 483, 760 N.W.2d 446.

§ 948.01(7)(b). But we see no logic in the argument that those legislative choices should be interpreted to mean that "any object" in § 948.01(5)(a)2. cannot include a live animal, contrary to the very broad meaning of "any object."

¶71    Regarding Coughlin's argument about the differing penalty schemes in WIS. STAT. §§ 948.02 and 944.18(2)(h), he fails to show how this could be pertinent, much less how it could drive the analysis regarding a distinction that could at best be merely implied in the statutes. Coughlin does not explain how the fact that some child sex crimes involving live animals could be charged at different levels of severity under alternative statutes supports the alleged implied distinction. Our legislature is presumed to be aware of existing laws and the courts' interpretations of the laws. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶103, 327 Wis. 2d 572, 786 N.W.2d 177. Therefore, we presume that the legislature is aware of the settled precedent that nondiscriminatory prosecutorial discretion is broad and that due process permits prosecutions under statutes that have identical substantive elements but different penalty schemes. *See State v. Cissell*, 127 Wis. 2d 205, 215, 378 N.W.2d 691 (1985); *United States v. Batchelder*, 442 U.S. 114 (1979).

¶72    In sum on this issue, we reject Coughlin's argument that there was not sufficient evidence to support a conviction on Count 5 under the prosecution theory involving the alleged calf-pen incident. Therefore, he is not entitled to have this topic addressed at the *Machner* hearing for at least the reasons that trial counsel could not have been ineffective for failing to raise an argument that would have had no effect on the trial and, by extension, appellate counsel could not have been ineffective for failing to raise the issue.

### B. Missing Feature Of Element

¶73    As a separate challenge to Count 5, Coughlin points out that, when one compares the language of WIS. STAT. § 948.01(5)(a)2. to the jury instruction actually given to define "sexual contact," the trial court omitted the phrase that we now show in strike-through mode:

> Sexual contact means any intentional touching ~~of the complainant's or defendant's intimate parts~~ by the defendant, either directly or through the clothing by the use of any object, if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant, or sexually arousing or gratifying the defendant.

However, even though the reference to "intimate parts" was omitted from this passage, the passage was, without explanation to the jury, followed by this sentence:  "Intimate part means penis of a human being."

¶74    The State does not dispute that the omission of the phrase shown above in strike-out mode was error.[18]  Instead, the State argues that the error was harmless and that therefore Coughlin cannot establish that trial counsel was ineffective for not raising this issue and that appellate counsel was also ineffective for not raising it.  Coughlin argues that it was not harmless.

¶75    On this issue, the postconviction court concluded that the error was harmless because the trial court "skimmed over and did not read [the omitted

---

[18]  As with Coughlin's challenge to the instructions regarding the mode and acts of sexual assaults, Coughlin did not object to this instruction and, for the reasons we have discussed in the text above, he relies on the argument that it was constitutionally ineffective for trial counsel to fail to object and constitutionally ineffective for appellate counsel to fail to raise the issue.  The State briefly asserts that Coughlin has failed to develop ineffective assistance arguments on this issue on appeal.  We disagree.

phrase] for some reason" and "the complete instructions were given to the jury" in writing.[19]

¶76    For reasons we now explain, we agree with Coughlin. Accordingly, we direct that this is also a proper subject of a *Machner* hearing to determine whether trial counsel and appellate counsel performed deficiently on this issue. If both counsel did perform deficiently on this issue, the error was sufficiently prejudicial to require a new trial on Count 5, under legal standards that we now summarize.

¶77    "Jury instructions that have the effect of relieving the State of its burden of proving beyond a reasonable doubt every element of the offense charged are unconstitutional under the Fifth and Sixth Amendments." *State v. Draughon*, 2005 WI App 162, ¶13, 285 Wis. 2d 633, 702 N.W.2d 412. "'A constitutional or other error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *Id.*, ¶15 (quoted source omitted). In such a case, the "judgment should be reversed unless we can be sure that the error did not contribute to the conviction." *Id.*, ¶18.

¶78    Coughlin makes two categories of arguments on the harmless error topic. First, he points out that the facts surrounding the alleged calf-pen incident

---

[19] The postconviction court was incorrect if the court was referring to the written instructions provided to the jury, as opposed to the repetition of the correct definition of sexual contact contained in the instructions on other counts. The record item reflecting the written jury instructions of the trial court shows that the element was missing from that version.

On a related note, for multiple reasons that we need not detail, the cause of the omission strongly appears to have been a scrivener's error, not a conscious choice of the trial court. However, this apparent inadvertence does not count in the analysis. We assess what a reasonable jury would have thought, not how the record now strikes us with the benefit of hindsight and also not how the trial court might have subjectively dealt with the issue

involving the younger nephew were sharply disputed at trial and that they were different in kind from the allegations of sexual assaults for Counts 1 - 4. Without repeating here all details cited by Coughlin, he points out that there were multiple disputes between the parties at trial, which were highlighted in arguments by counsel, about whether any part of a calf touched the younger nephew's penis. This included the issue whether a calf "sucking" on a human penis, as the younger nephew testified, would typically or perhaps necessarily cause physical injury of a severity for which there was no evidence. Second, Coughlin emphasizes that the jury was specifically instructed to consider each count independently from consideration of other counts:

> It is for you, ladies and gentlemen of the jury, to determine whether the defendant is guilty or not guilty of each of the offenses charged. You must make a finding as to each count of the information. Each count charges a separate crime, and you must consider each one separately. Your verdict for the crime charged in one count must not affect your verdict on any other counts.

For these reasons, Coughlin argues, it does not matter that the jury was given the correct definition of "sexual contact" in connection with the separate acts charged in the separate Counts 1 - 4.

¶79 The State does not dispute Coughlin's first point about the contested and unusual nature of the acts alleged in Count 5. Instead, on this issue the State makes the following arguments.

¶80 The State references the nature of the factual allegations and then asserts that the jury "obviously still would have convicted Coughlin" on Count 5 if it had been given the correct instruction and that therefore we should conclude that the error is harmless based on our supreme court's opinion in *State v. Williams*, 2015 WI 75, 364 Wis. 2d 126, 867 N.W.2d 736. The State fails to develop this

argument in at least two respects and we reject the argument on that basis. First, the State fails even to note, much less come to grips with, the extremely high standard stated in *Williams*: It must be "clear beyond a reasonable doubt that the jury still would have convicted the defendant had the correct instruction been provided." *See id.*, ¶53. Second, the State fails to recognize that the instructional error at issue in *Williams* that was deemed harmless involved the prosecution proving at trial one *additional* element than was required to convict the defendant, which bears no resemblance to the facts here. *See id.*, ¶¶71-72; *see also id.*, ¶62 ("[I]f an erroneous jury instruction omits an element or instructs on a different theory, it will often be difficult to surmise what the jury would have done if confronted with a proper instruction," because the jury's verdict could not have addressed statutory elements or factual theories of guilt that the jury was not asked to consider.).

¶81 The State makes two additional points that could have weight for the proposition that the jury might have understood the element properly. First, the State notes that, as summarized above, the instruction included the sentence, "Intimate part means penis of a human being." This raises the possibility that the jury might have mentally back-filled into the omitted spot the phrase "of the complainant's or defendant's intimate parts." Otherwise, why would the jury be instructed: "Intimate part means penis of a human being"?

¶82 Second, the State relies on the fact that the jury was properly instructed on the definition of "sexual contact" in connection with Counts 1 - 4. This could add to the possibility that the jury would have decided that "sexual contact" should be defined the same way in all five counts.

¶83    Even after taking those points into account, we cannot conclude beyond a reasonable doubt that a rational jury would have found Coughlin guilty of Count 5 absent the error. Our lack of certainty arises from considerations that include the following. First, the factual issue was disputed as to precisely what part, if any, of the younger nephew was touched by a calf. Therefore, jurors could have reasonably thought that something about the alleged calf-pen incident called for a different legal standard on the "sexual contact" element than they were to apply for the other four counts. Second, the jury was directed by the trial court that "[e]ach count charges a separate crime, and you must consider each one separately"; jurors could have reasonably thought that drawing on the similar instruction in the other counts would have violated this direction. Third, omitting the phrase "of the complainant's or defendant's intimate parts" did not result in an incoherent instruction that would have, on its face, alerted the jurors to a defect; the instruction could be literally applied as given, with the erroneous meaning. In other words, the jury was not invited by an obvious omission to mentally back-fill the omitted phrase. Fourth, and more generally, none of the clues for the jury that the State now relies on were clear and unambiguous, either individually or collectively.

¶84    In sum on this issue, having determined that what the State admits was an instructional error in defining an element was not harmless, we conclude that Coughlin has shown the prejudice prong of ineffective assistance. Accordingly, he is entitled to an opportunity to prove that trial and appellate counsel performed deficiently in not objecting to the omitted portion of the instruction on Count 5.

## IV. ADDITIONAL CLAIMS OF INEFFECTIVE ASSISTANCE
## OF TRIAL COUNSEL

¶85     Coughlin argues that, in addition to the topics addressed above, trial counsel was also constitutionally ineffective when he:  (1) did not properly address the prosecution's introduction and use of a letter containing what Coughlin submits were provably false allegations that Coughlin molested or "probably" molested more than three other children, in addition to molesting the nephews; (2) failed to object to prejudicial evidence and arguments regarding conduct of and child sexual assault convictions of Coughlin's brother, Donald Coughlin; (3) failed to impeach witnesses called by the prosecution with evidence supporting the defense theory that the mother of the nephews prompted her sons to falsely accuse Coughlin; and  (4) failed to impeach the older nephew regarding "drastic differences in the number and location of assaults [against the older nephew] alleged [by the older nephew] over time."

¶86     Regarding these claims of ineffective assistance of trial counsel, the postconviction court said, without elaboration, that it had reviewed the record from the trial and that "I cannot find where counsel was insufficient."

¶87     We now address these issues in turn, concluding that Coughlin has shown sufficient possible deficiency and prejudice on these issues to be entitled to a *Machner* hearing.  As will be seen, these issues are interrelated.

### A. The Letter

¶88     The letter viewed by the jury, dated June 19, 2008, was slightly longer than one type-written page.  It was from the mother of the nephews to

Coughlin (calling him "Danny").[20] It accused Coughlin of "molesting" or "probably" "molesting" the following: "your own children"; the mother's "sons" (the two nephews of Coughlin who are the alleged victims in this case); and three other boys. The letter was described by the defense at trial as an attempt at "blackmail" that was allegedly part of a "vendetta" by the mother against both Coughlin and Donald Coughlin in 2008-09 involving a church dispute. The letter to Coughlin stated in part:

> I am telling you to stop attacking this priest and you convince everyone else you know who is involved to stop or I will go to the District Attorney and DHS [presumably referring to county child protection workers]. It will be a public investigation and you will be ruined.

It further stated that Coughlin "could go to prison for a very long time for what you have done already" and that he would "burn" in "Hell" "for molesting children." The defense argued at trial that the letter showed a strong motivation by the mother to, in the words of the letter, "ruin" Coughlin, to the point of encouraging false accusations of child sexual assault against both the nephews and other children.

¶89 To clarify, while the letter alleged that Coughlin had molested the nephews identified as the victims in this case, which in itself has to be considered a prejudicial accusation, the thrust of Coughlin's argument on appeal is that trial counsel was ineffective in failing to address the letter's allegations that he had molested more than three *other* children, which Coughlin contends is in the nature of inadmissible "other acts" evidence. *See* WIS. STAT. § 904.04.

---

[20] The jury was informed that the mother of the nephews was the former wife of Donald Coughlin, and therefore the former sister-in-law of Coughlin.

¶90     The State argues that trial counsel did not perform deficiently in addressing the highly prejudicial contents of the letter because counsel characterized the letter to the jury, in his opening statement, as part of a "really crazy" and "frankly bizarre" attempt to "blackmail" Coughlin.   The State also asserts that the trial court "could have" excluded witnesses that Coughlin now asserts would have proven the allegations related to other alleged victims in the letter to be false under WIS. STAT. § 904.03 on the grounds of confusion or waste of time.   The State separately asserts briefly only the following as a lack-of-prejudice argument:  that the record reflects that "no emphasis was placed on" the allegations regarding other victims in the letter.[21]

¶91     We conclude that Coughlin is entitled to the opportunity to show at the *Machner* hearing that trial counsel was ineffective on this issue and that appellate counsel was ineffective in failing to raise it.   The allegations in the letter identified particular children in addition the two nephews and unambiguously alleged that Coughlin had "molest[ed]" or probably molested the identified children.   Further, it came from someone close to Coughlin, who claimed to have direct knowledge of acts that made him deserving of a long prison term, as well as banishment to "Hell."   Thus, these direct and serious allegations of sexual assaults against other children carried a great potential for prejudice.

---

[21] The State also apparently means to suggest that, because the trial court ruled in advance of trial, based on an agreement of the parties, that "neither party is going to be utilizing character evidence," this undermines Coughlin's current position that trial counsel should have attempted to demonstrate the falsity of the molestation allegations in the letter.  But the record reflects that the trial court simply accepted the stipulation and that does not shed light on the potential for trial counsel to have demonstrated the falsity of the allegations involving the children other than the two nephews.

¶92    The State's arguments on this issue are conclusory and limited.  It emphasizes that trial counsel told the jury in opening statement that these highly prejudicial allegations were "really crazy."  But this is a far cry from either convincing the trial court to require redactions to the allegations or proving them false, if trial counsel could have accomplished either option.  The State does not support its suggestions that the record shows that the trial court would have declined a defense request to redact the letter or else excluded evidence offered by the defense that the allegations were false.  Further, and critically, the trial strategy or strategies that trial counsel employed in dealing with issues related to these highly prejudicial allegations are unclear from the record.  It is true that courts may not "'second-guess the trial counsel's considered selection of trial tactics or the exercise of a professional judgment in the face of alternatives that have been weighed by trial counsel.'"  *State v. Hunt*, 2014 WI 102, ¶55, 360 Wis. 2d 576, 851 N.W.2d 434 (citation and alteration omitted).  But here, in the absence of a *Machner* hearing, we could only guess at what "considered selection of trial tactics" or "exercise of a professional judgment in the face of alternatives" might have been weighed by trial counsel that could have been non-deficient.  That is, we cannot tell from the record what possible strategies trial counsel considered and rejected, even if trial counsel's choices made after reasonably considering the relevant law and facts might be "virtually unchallengeable."  *See Strickland*, 466 U.S. at 690.

¶93    On the prejudice issue, the State fails to address the fact that the letter was blown up for jury scrutiny and also that the jury requested to see it during deliberations.  That is, the record reflects at least sufficient interest in the letter for the jury to request to see it.  This lends support to the prejudice argument.

¶94   In sum on this issue, taking all these factors into account, the potential for the unredacted letter to prejudice the jury was sufficiently high that, when considered in a cumulative manner with the prejudicial effects of other problems addressed in this opinion, our confidence in the outcome is placed in doubt, assuming that deficient performance of both trial and appellate counsel on this issue can be shown at a *Machner* hearing.  Coughlin has made a sufficient showing that he is entitled to examine trial and appellate counsel regarding their strategies, or the possible absence of strategies, regarding the topics of evidence and argument presented at trial involving the letter and its highly prejudicial contents regarding the alleged sexual assaults of other children.

### B. Donald Coughlin's Conduct, Convictions

¶95    As our supreme court explains in *State v. Coughlin*, 2022 WI 43, 402 Wis. 2d 107, 975 N.W.2d 179, Donald Coughlin was convicted on 15 counts of child sexual assault in Juneau County after three individuals gave statements as adults in 2009 alleging that Donald Coughlin had repeatedly sexually abused them over the course of their childhoods.  *See id.*, ¶¶1, 6, 54 (affirming convictions; rejecting sufficiency-of-the-evidence challenges).  In this separately prosecuted case against Coughlin, the jury learned that the nephews who are the alleged victims here were two of Donald Coughlin's child victims in the case against him, and that Donald Coughlin was Coughlin's brother and the nephews' stepfather.

¶96    Coughlin argues that trial counsel performed deficiently by failing, in multiple ways, to prevent the prosecution from effectively smearing him at trial through guilt-by-association with Donald Coughlin and by giving the prosecution the benefit of the implication that, because the testimony of the nephews in the Donald Coughlin case resulted in convictions, their testimony in this case should

result in convictions. Coughlin argues that avoidable prejudice occurred in part because trial counsel did not object when the prosecution presented evidence of sexual assaults by Donald Coughlin that went beyond what was permitted under a motion in limine filed by the prosecution. On this issue, the State does not argue that the prosecution did not exceed the scope of the evidence regarding conduct of, and convictions of, Donald Coughlin that was allowed by the trial court.

¶97 Coughlin provides numerous examples of potentially highly prejudicial evidence and argument. Notably, the jury learned of Donald Coughlin's child sexual assault convictions, without any record being made of the substance of a defense objection. In addition, the prosecutor told the jury in opening statement, without objection by the defense, that Donald Coughlin subjected the nephews to hard blows to their genitals, which they would return in kind, "because that's how they were taught, that's how they were raised *by Donald Coughlin and by the defendant*," and also told the jury that the nephews would testify at trial that "[t]hey had been groomed to be the perfect sexual assault victims *by Donald and the defendant*." (Emphases added.) Similarly, the prosecutor told the jury that "something that was done regularly by" both Coughlin and Donald Coughlin was to grab the genitals of the nephews, "squeezing hard," "from the time they were young boys," and also said that Coughlin and Donald Coughlin both commented on the size of the older nephew's penis. These statements by the prosecutor could reasonably be interpreted as describing the brothers as criminal co-actors who victimized the same children in the same ways. We need not belabor the deeply prejudicial effect that such an argument could have once the jury learned that the other alleged co-actor had been convicted for the same type of conduct during roughly the same time period. It is prejudice sufficient to undermine our confidence in the outcome at trial.

43

¶98    The State points out that the trial court gave the jury a cautionary instruction explaining that testimony by the nephews about Donald Coughlin's physical and sexual assaults of them should be considered solely as an explanation of why the nephews worked on Coughlin's farm during the summers.[22]  We do not question the State's position that, in itself, this instruction regarding the allegations of assaultive conduct by Donald Coughlin weighs against a determination that trial counsel performed deficiently.

¶99    But the instruction on its face addressed only one piece of the problem.  It did not address the testimony and argument about Donald Coughlin's convictions.   Nor did it address, as a notable example, the statements of the prosecutor that, in effect, described the brothers as criminal co-actors.  As a result, the prosecutor was allowed to make prejudicial comments that served to undercut whatever value the limited instruction might have had.

¶100   The State argues that we should assume that trial counsel relied on his considered selection of tactics and professional judgment, *see Hunt*, 360 Wis. 2d 576, ¶55, simply from the fact that trial counsel took the general position on the record at trial that, when it came to evidence or argument regarding Donald

---

[22]  Immediately before the older nephew testified, the circuit court instructed the jury:

> Evidence will be presented regarding the other conduct of Donald Coughlin, the defendant's brother, for which the defendant is not on trial.  The evidence concerning Donald Coughlin is only offered for the limited purpose of explaining why [the nephews] spent their summers at Daniel Coughlin's farm.  Specifically, evidence will be presented that Donald Coughlin engaged in physical and sexual abuse of [the nephews].  You may consider this evidence only for the purposes I have described, giving it the weight you determine it deserves.

The same instruction was given again before deliberations.

Coughlin, trial counsel would "object[] at reasonable times" and that trial counsel would not let evidence or argument "get too far into Donny," meaning, too extensively into the conduct of Donald Coughlin. This vague commitment to making "reasonable" objections adds little to the analysis. Without a *Machner* hearing, we cannot discern from the record, for example, why trial counsel did not point out to the trial court that the rationale supporting the admission of the potentially highly inflammatory fact that Donald Coughlin was convicted—to provide the prosecution with an impeachment opportunity in examining a defense witness—might have been hollow for multiple reasons, including because there was no dispute about the substance of what the defense witness testified to. The State does not refute these points, but merely directs us to contemporaneous statements made by trial counsel regarding the topic of Donald Coughlin's convictions, as if trial counsel's statements reflected the execution of a clear strategy, but they do not.

¶101 In sum on this issue, Coughlin has made a sufficient showing that he is entitled to examine trial and appellate counsel on the topics of evidence and argument regarding Donald Coughlin's conduct and his convictions.

### C. Witness Impeachment Regarding Disclosures Of Assaults And Witness Motivations

¶102 Coughlin argues that trial counsel was ineffective by failing, in the course of generically pursuing one defense theory, to make use of impeachment material that Coughlin now contends would have made the theory much more plausible. The argument is that trial counsel should have impeached various witnesses with identified materials, with the result that the jury would have had a more accurate understanding of when and why the nephews, primarily the older one, reported that Coughlin, as opposed to Donald Coughlin, had sexually

45

assaulted them and regarding motives of various witnesses to lie, in particular the mother of the nephews. These failures, the argument proceeds, deprived the jury of evidence bearing on the defense theory that the nephews' mother caused the older nephew to falsely accuse Coughlin to police and that the nephews—who had both been sexually assaulted by Donald Coughlin—stuck with incriminating accounts against Coughlin, in addition to giving incriminating accounts against Donald Coughlin. Coughlin makes three closely related arguments that we summarize in turn, below. We then explain why, while it may present a close issue, we conclude that failures by trial counsel on this issue, when considered cumulatively with other failures noted in this opinion, establish prejudice, so that evidence regarding the decision-making of counsel at a *Machner* hearing is required.

¶103 As brief background for the three related arguments, it was undisputed at trial that in 2009 the nephews' mother told the older nephew the following: a cousin of the nephews had reported that *Coughlin*, the mother's former brother-in-law, had sexually assaulted the cousin—when in fact the cousin had reported that *Donald Coughlin*, the mother's former husband, had sexually assaulted the cousin. The following timing element is also undisputed: this conversation between the mother and the older nephew occurred just before the older nephew first made the disclosures about both Coughlin and Donald Coughlin to police. The mother testified that she simply made a mistake when she told her son that the cousin made allegations against her former brother-in-law as opposed to against her former husband.

¶104 We note at the outset that the theory that the defense pursued to a degree at trial—that the older nephew, as an adult, was motivated to falsely accuse Coughlin of child sexual assault based on his mother's statements against

46

Coughlin in 2009—might seem implausible on its face. The theory would seem to require assumptions about unusually strong influence of the nephews' mother over her adult son, or an unusual ability to manipulate him. But this could be where a reasonable jury, based on all of the evidence, might decide to give weight to the highly unusual letter that the mother wrote to Coughlin, summarized in part above. That is, a jury could construe the letter as reflecting a fierce determination by the mother at a critical point in time to, using her own word, "ruin" Coughlin with false molestation allegations because of her deep animosity arising from the church dispute.

¶105 With that context as background, Coughlin's first argument on this issue is that trial counsel should have impeached the nephews' mother and the older nephew on the topic of when the older nephew first told his mother that Coughlin had sexually assaulted him. Coughlin argues that this impeachment would have helped the jury understand that the mother "tricked" the older nephew in 2009 "into making allegations against [Coughlin] by falsely telling" the older nephew that a cousin of the older nephew had reported that Coughlin had molested the cousin, when in fact the mother knew that the cousin had reported that Donald Coughlin had molested the cousin.

¶106 The State contends that this argument rests in part on the false premise that trial counsel did not have to account for evidence, which was presented at trial, that the older cousin disclosed sexual assaults by Coughlin to the mother before 2009. This evidence came primarily in the form of testimony by both the mother and the older nephew, about events that allegedly occurred nearly ten years earlier in which the older nephew allegedly told his mother that he had been sexual assaulted by Coughlin and Donald Coughlin. Coughlin replies in part by noting that there was no documentary corroboration of this testimony, and

points to statements given by the mother and the older nephew to police and at the second trial that could undermine a finding that the two had this earlier conversation, while the State points to contrary evidence.

¶107   Coughlin's second closely related argument on this issue is that trial counsel should have made use of evidence that could have supported the theory that the nephews' mother was not mistaken about the cousin's allegations in 2009 and that the mother *intentionally* told the older nephew the falsehood that the cousin had reported that Coughlin had assaulted the cousin, when she knew that the allegation was against Donald Coughlin.   Again, the thrust of the State's argument in response is that this fails to take into account the testimony by the mother and the older nephew that the older nephew disclosed sexual assaults by Coughlin to his mother years earlier.

¶108   The third closely related argument is that trial counsel failed to present evidence to the jury that could have shown that the older nephew reported allegations against Coughlin to the police on the same day in 2009 on which his mother told him that Coughlin had sexually assaulted the cousin and that the older nephew talked to police before he learned that the cousin had not said that Coughlin sexually assaulted the cousin.   The State points out that this particular argument omits a significant fact:   the older nephew specifically testified that he learned, before talking to police, that the cousin had alleged assaults by Donald Coughlin, not Coughlin.   Further, we note that this testimony was corroborated by a statement that the older nephew gave police.   Coughlin replies by pointing to statements the older nephew made that could have been used to impeach this testimony.

¶109 To repeat, we view these three related issues, standing alone, as presenting a close question as to whether prejudice has been shown. Supporting the State's position, if trial counsel had presented this theory as vigorously and in the ways that Coughlin now argues he should have, it would have required the jury to give great weight to the personal motivations of the mother and to her potential influence over her adult son as compared with the core evidence at issue in this case: the testimony of the nephews, as adults, about Coughlin's alleged sexual assaults of them when they were children. As the State points out, even assuming that Coughlin could have proven conclusively that the mother intentionally falsely accused Coughlin (at least in part by way of the cousin's misquoted statement) to the older nephew in 2009, a jury might reasonably find that this did not matter, given the older nephew's testimony as a whole, including his testimony that he disclosed abuse by Coughlin to his mother well before 2009.

¶110 However, it is not for this court to assess the credibility of witnesses or weigh the evidence. *See State v. Jackson*, 2023 WI 3, ¶¶8, 18, 405 Wis. 2d 458, 983 N.W.2d 608 ("If the defendant's motion alleges sufficient and non-conclusory facts which would entitle the defendant to relief and the record does not conclusively establish otherwise, then the circuit court must hold a *Machner* hearing."). Further, as we have explained, evidence that could have supported the defense theory was out of the ordinary, particularly the nephews' mother's accusation-filled, threatening letter. The State argues that the prosecution at trial presented "overwhelming evidence" that the older nephew disclosed sexual assaults by both of the Coughlin brothers well before "the so-called blackmail letter that supposedly led to the false allegations," but it would be for a factfinder to determine whether the testimony given was "overwhelming."

¶111    In sum on this issue, Coughlin shows that he is entitled to an evidentiary hearing to determine whether trial counsel was deficient in failing to impeach witnesses regarding disclosures to police of alleged sexual assaults by Coughlin, and to determine whether appellate counsel was deficient in not raising the issue.

### D. Witness Impeachment Regarding Frequency And Locations Of Assaults

¶112    Coughlin argues that trial counsel was ineffective in failing to impeach the older nephew regarding what Coughlin characterizes as "drastic differences in the number and location of assaults alleged over time," in particular regarding alleged instances of oral sex.  The State does not dispute that there were drastic differences among statements given by the older nephew on these topics and that there was no impeachment on these topics.  Instead of disputing the premise, or arguing that trial counsel had an obviously good reason reflected in the record not to impeach on these topics, the State's only position on this issue is that trial counsel's performance was not deficient because trial counsel impeached the older nephew on topics other than the drastic inconsistencies.  We conclude that Coughlin has shown the possibility of ineffective assistance on this issue that should be one subject of a *Machner* hearing.

¶113    As Coughlin notes, the older nephew initially told police in a recorded interview that the following was the sexual activity that Coughlin had with him, all of which occurred during the second summer he worked on Coughlin's farm, 1989:  Coughlin put his penis between the older nephew's legs, and the older nephew either masturbated Coughlin or Coughlin masturbated him about once a month for each activity, and had oral sex "only like twice in the shower," with the result that about two times per month that summer Coughlin had

some sort of sexual activity with him. However, at the third trial in this case, the older nephew testified that Coughlin would perform oral sex on him or have some other sexual activity with him "every other week, or weekly even," starting during the second summer (1989) and performed oral sex on him during the summers of 1990, 1991, and 1992, in the shower and also in other locations, such as in each of their bedrooms.[23]

¶114 These are significant differences, as the State implicitly acknowledges by failing to address them. They are arguably contrary to what the prosecutor told the jury in opening statement, namely, that the older nephew "consistently describe[d]" the sexual assaults by Coughlin. Particularly striking is the difference between the representation of two incidents of oral sex in one summer and the later representation of multiple incidents of oral sex over four summers. Further, the frequency-and-locations topics go to the heart of the allegations; if the older nephew was lying, exaggerating, or not accurately recalling these particular details, this could readily provide reasonable doubt to convict on one or more counts. Given how central this testimony was to prosecution theories of guilt on Counts 1 – 4, Coughlin has shown prejudice.

¶115 Regarding the alleged deficiency of trial counsel on this issue, the State in essence suggests that trial counsel's performance could not have fallen below the objective standard of reasonableness because it involved a reasonable concern that other, more significant, areas of impeachment of the older nephew required counsel's full attention. But, lacking relevant testimony by trial counsel

---

[23] Coughlin asserts on appeal that the older nephew testified at trial that the oral sex never happened in the shower, but the trial transcript is ambiguous on this point. If anything, it may suggest that oral sex occurred in the shower and also other locations.

that could shed light on this concept, we reject the suggestion by the State that the record establishes that other areas of impeachment that trial counsel did pursue were necessarily more significant than these topics and that impeachment regarding these inconsistencies would have diminished other impeachment efforts. The State does not address an obvious point: if trial counsel thought that counsel was able to raise doubts about the older nephew's testimony through impeachment on other topics, why then did he leave off impeachment on these core issues of guilt or innocence, which at least on its face could have served only to reinforce or amplify doubts about the older nephew's testimony? No doubt, the cross examination of an alleged victim of child sexual assault (even as an adult) necessarily calls for difficult choices by defense counsel and, as we have noted, courts must defer to feasible strategy choices. But trial counsel here was willing to challenge the veracity of the older nephew on some issues—why not on these issues that go to the core of the allegations? Without the benefit of evidence from a *Machner* hearing, we are left to speculate about whether any strategic considerations were in play and whether all relevant facts satisfy the objective standard of reasonableness.

¶116 In sum on this issue, Coughlin shows that he is entitled to an evidentiary hearing to determine whether trial counsel's performance was deficient in failing to impeach the older nephew regarding the frequency and locations of the alleged sexual assaults and whether appellate counsel was deficient in failing to raise the issue.

¶117 We close with a set of observations regarding the topic of prejudice alleged by Coughlin across his claims of ineffective assistance. We have addressed prejudice issues throughout this opinion, including the limited arguments on the topic offered by the State on each issue. The State concludes its

brief by making a cursory argument to the apparent effect that, even if Coughlin has alleged sufficient, non-conclusory facts that could show deficient performance by trial counsel on one or more of the above issues, he cannot show prejudice on any or all issues, given the incriminating testimony given by the nephews and what the State calls the "completely far-fetched" defense theory that the nephews' mother could have successfully encouraged the nephews to make exaggerated or inaccurate allegations against Coughlin. This broad brush argument does not come to grips with our various conclusions above. Further, the State essentially invites us to substitute our assessments on issues of credibility and the weight of evidence for the assessments of a jury, which we cannot do. Coughlin has shown how he was prejudiced by the alleged deficiencies that we identify above, and the State does not develop a supported argument that prejudice could not be shown from any of the individual problems that Coughlin has identified in his postconviction motion, or any combination of the problems.

## CONCLUSION

¶118 For all of these reasons, we affirm some specific rulings of the postconviction court but reverse the order denying Coughlin's postconviction motion and remand to the circuit court for further proceedings consistent with this opinion.

*By the Court*.—Judgment and order affirmed in part; reversed in part and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.